136 F.3d 342
 124 Ed. Law Rep. 48
 UNITED STATES of America; Nancy Mellette, Plaintiffs-Appellees,
Shannon Richey Faulkner, individually and on behalf of all
others similarly situated, Plaintiff,
v.
James E. JONES, Jr., Chairman, Board of Visitors of The
Citadel, the Military College of South Carolina; Carroll A.
Campbell, Jr., Governor of The State of South Carolina; T.
Easton Marchant, Adjutant General of the State of South
Carolina; Barbara S. Nielsen, Superintendent of Education
of the State of South Carolina; William F. Prioleau, Jr.;
William E. Jenkinson, III; Leonard C. Fulghum, Jr.; James
M. Leland, Jr.; John A. McAllister, Jr.; David S. Boyd,
Jr.; Julian G. Frasier, III; James W. Bradin; Larry J.
Ferguson; Steven D. Peper, Members Of The Board of Visitors
of The Citadel, The Military College of South Carolina;
Wallace I. West, Jr., Director of Admissions and Recruiting
at The Citadel, The Military College of South Carolina;
Claudius E. Watts, III, President of The Citadel, The
Military College Of South Carolina, in their Official
Capacities; State of South Carolina; The Citadel, The
Military College Of South Carolina; The Board Of Visitors
of The Citadel, the Military College of South Carolina,
Defendants-Appellants.
Nancy MELLETTE, Plaintiff-Appellant,
Shannon Richey Faulkner, individually and on behalf of all
others similarly situated; United States of
America, Plaintiffs,
v.
James E. JONES, Jr., Chairman, Board of Visitors of The
Citadel, The Military College of South Carolina; Carroll A.
Campbell, Jr., Governor of the State of South Carolina; T.
Easton Marchant, Adjutant General of the State of South
Carolina; Barbara S. Nielsen, Superintendent of Education
of the State of South Carolina; William F. Prioleau, Jr.;
William E. Jenkinson, III; Leonard C. Fulghum, Jr.; James
M. Leland, Jr.; John A. McAllister, Jr.; David S. Boyd,
Jr.; Julian G. Frasier, III; James W. Bradin; Larry J.
Ferguson; Steven D. Peper, Members of the Board of Visitors
of The Citadel, The Military College of South Carolina;
Wallace I. West, Jr., Director of Admissions and Recruiting
at The Citadel, the Military College of South Carolina;
Claudius E. Watts, III, President of The Citadel, The
Military College of South Carolina, in their official
capacities; State of South Carolina; The Citadel, the
Military College of South Carolina; The Board Of Visitors
Of The Citadel, The Military College of South Carolina,
Defendants-Appellees.
 Nos. 96-2290, 96-2446.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1997.
Decided Feb. 11, 1998.
 
 ARGUED: Kenneth Paul Woodington, Sr. Asst. Atty. Gen., Columbia, SC, for Appellants. Valorie Kay Vojdik, New York University School Of Law, New York City; Thomas Evans Chandler, United States Department of Justice, Washington, DC, for Appellees. ON BRIEF: Charles Molony Condon, Atty Gen., Treva G. Ashworth, Deputy Atty. Gen., Reginald I. Lloyd, Asst. Atty. Gen., Columbia, SC; M. Dawes Cooke, Jr., Barnwell, Whaley, Patterson & Helms, Charleston, SC; Robert H. Hood, Hood Law Firm, Charleston, SC, for Appellants. Deval L. Patrick, Asst. Atty. Gen., Jessica Dunsay Silver, United States Department Of Justice, Washington, DC, for Appellee United States. Robert R. Black, Charleston, SC; Suzanne E. Coe, Greenville, SC; Henry Weisburg, Susan R. Schwaiger, Shearman & Sterling, New York City, for Appellee Mellette.
 Before WIDENER, NIEMEYER, and HAMILTON, Circuit Judges.
 August 14, 1996 Order affirmed in part and vacated in part and Orders of July 22, 1994, July 24, 1995, October 3, 1995, affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WIDENER and Judge HAMILTON joined.
 OPINION
 NIEMEYER, Circuit Judge.
 
 
 1
 This appeal adds yet another chapter to the continuing litigation over The Citadel's formerly male-only admissions policy. Following the Supreme Court's decision in United States v. Virginia, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (holding that VMI's unconstitutional male-only admissions policy could not be remedied with the parallel women's program at Mary Baldwin College), The Citadel announced that it had abandoned its male-only policy and was admitting women to its Corps of Cadets. Thereafter, on August 14, 1996, the district court entered an order declaring that The Citadel's earlier proposed parallel program at Converse College was unconstitutional and enjoining The Citadel to end its male-only policy. Contending that the court's order, as well as other orders entered earlier by the court, were moot and unnecessary, The Citadel and the State of South Carolina appealed. Nancy Mellette, the private plaintiff in this case, cross-appealed, challenging the district court's refusal to certify a class action under Federal Rule of Civil Procedure 23.
 
 
 2
 For the reasons that follow, we vacate portions of the district court's August 14, 1996 order and affirm the remainder. We also affirm the other orders challenged by The Citadel and Mellette.
 
 
 3
 * The Citadel is a state-supported four-year military college located in Charleston, South Carolina. Throughout its 154-year history, until 1996, The Citadel maintained a policy of admitting only men to its Corps of Cadets. It did admit women to other educational programs.
 
 
 4
 In early 1993, The Citadel admitted Shannon Faulkner, not aware of her gender. When it discovered that Faulkner was female, however, it revoked her admission. Faulkner filed this action, on her own behalf and on behalf of a class, alleging that The Citadel's actions denied her equal protection of the laws because of her sex in violation of the Fourteenth Amendment and seeking an order compelling her admission and prohibiting The Citadel's discriminatory admissions policy. Shortly thereafter, the United States intervened as plaintiff and named South Carolina as an additional defendant.
 
 
 5
 In August 1993, the district court entered a preliminary injunction, ordering that Faulkner be allowed to attend day classes at The Citadel but not, pending the litigation, to enter the Corps of Cadets. In affirming that order, we concluded that "[w]hile the presence of a female in the day classes may be disruptive in the first days, an order permitting Faulkner's attendance is not tantamount at this time to integrating or altering the military program at The Citadel." Faulkner v. Jones, 10 F.3d 226, 233 (4th Cir.1993). We also noted that as of that time South Carolina had not indicated an interest in creating a parallel women's program, which we had indicated, in connection with similar litigation involving the Virginia Military Institute, was available to remedy an equal protection violation. See United States v. Virginia ("VMI I "), 976 F.2d 890, 900 (4th Cir.1992), aff'd, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).
 
 
 6
 Following a two-week bench trial in the spring of 1994 on the merits of Faulkner's claim, the district court found that The Citadel's male-only admissions policy violated the Equal Protection Clause and ordered The Citadel to admit Faulkner to the Corps of Cadets beginning in the fall of 1994 and to plan for the admission of other women in the fall of 1995. See Faulkner v. Jones, 858 F.Supp. 552, 569 (D.S.C.1994). Pending appeal, we stayed that order with the effect that it postponed Faulkner's admission date. In April 1995, we affirmed the district court's determination on the merits but modified the remedy. See Faulkner v. Jones, 51 F.3d 440, 442 (4th Cir.), cert. denied, 516 U.S. 938, 116 S.Ct. 352, 133 L.Ed.2d 248 (1995). Recognizing that August 12, 1995, was the latest date that Faulkner could enter the Corps of Cadets if she were to be admitted, we ruled that she would have to be admitted at that time, unless before then the State of South Carolina offered a satisfactory parallel program for women, approved by the district court.
 
 
 7
 In response to our decision, The Citadel and the State of South Carolina filed a proposed plan on June 5, 1995, to create a parallel program at Converse College called the South Carolina Institute of Leadership for Women (SCIL). The discovery that followed thereafter in connection with the district court's consideration of the plan was highly contested, requiring continuous court intervention. On July 24, 1995, the district court issued an order concluding that discovery could not be completed before August 12, 1995, when Faulkner was required to report as a member of the Corps of Cadets, and accordingly it scheduled a discovery cutoff for October 15, 1995, with a trial to commence on November 6, 1995. In ruling, the court said:
 
 
 8
 The problem is, the defendants have not done what they said they would. Instead of speeding the discovery process up, they have slowed it down. Instead of being open and fair as they promised, it has been business as usual for the defendants. They have failed to respond properly to discovery requests in violation of the rules of this court, and they have made legitimate objections to discovery that seem to serve little or no useful purpose for them but delay the completion of discovery significantly.
 
 
 9
 From entry of this order, The Citadel and South Carolina sought a stay from us in order to postpone Faulkner's entry into the Corps of Cadets, which we denied. See Faulkner v. Jones, 66 F.3d 661, 662 (4th Cir.), cert. denied, 516 U.S. 938, 116 S.Ct. 352, 133 L.Ed.2d 248 (1995).
 
 
 10
 Faulkner joined the Corps of Cadets on August 12, 1995. Shortly thereafter, however, on August 18, 1995, she withdrew because of illness.
 
 
 11
 When Faulkner withdrew from The Citadel, The Citadel and South Carolina moved to dismiss her suit as moot. In response Nancy Mellette, another applicant to The Citadel, moved to intervene as a plaintiff. With her motion, she also renewed Faulkner's motion for class certification, on which the court had not yet ruled. By order dated October 3, 1995, the district court granted Mellette's motion to intervene, granted the defendant's motion to dismiss Faulkner's claim as moot, and denied Mellette's motion for class certification.
 
 
 12
 In the fall of 1995, while the parties were preparing to go to trial on the adequacy of South Carolina's proposed parallel program at Converse College, the Supreme Court granted a writ of certiorari in the VMI case. In that case, the Fourth Circuit had approved Mary Baldwin College as an appropriate parallel program to remedy the equal protection violations in Virginia. See United States v. Virginia ("VMI II "), 44 F.3d 1229 (4th Cir.1995), rev'd, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). Accordingly, the district court granted The Citadel's motion to stay trial of South Carolina's proposed program at Converse College until the Supreme Court had ruled in the VMI case on the program at Mary Baldwin College.
 
 
 13
 While waiting for the Supreme Court to issue its opinion in VMI and about six months after the district court granted Mellette's motion to intervene as the private plaintiff, Mellette decided not to attend The Citadel. Instead, in April 1996 she accepted the offer of the United States Military Academy at West Point to enter its preparatory program. She is now enrolled at West Point.
 
 
 14
 On June 26, 1996, the Supreme Court issued its decision in VMI. See United States v. Virginia, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). The Court affirmed VMI I, holding that Virginia's exclusion of women from VMI denied women equal protection under the Fourteenth Amendment, and reversed VMI II, holding that the parallel program at Mary Baldwin College was not adequate to remedy the equal protection violation because it did not afford women the educational experience equal to that which VMI afforded men. The Court stated:
 
 
 15
 In myriad respects other than military training, VWIL does not qualify as VMI's equal. VWIL's student body, faculty, course offerings, and facilities hardly match VMI's. Nor can the VWIL graduate anticipate the benefits associated with VMI's 157-year history, the school's prestige, and its influential alumni network.
 
 
 16
 Id. at ----, 116 S.Ct. at 2284.
 
 
 17
 Two days after the Supreme Court announced its decision in VMI, The Citadel's Board of Visitors voted to end the male-only admissions policy and to admit women to The Citadel's Corps of Cadets. It announced, "Effective immediately, The Citadel will accept qualified female applicants into the Corps of Cadets." Following this announcement, The Citadel actively sought to recruit female applicants, and four women entered the Corps of Cadets in August 1996.
 
 
 18
 A few weeks later, Mellette filed a motion requesting that the district court enter an order (1) declaring that the Converse College remedial plan was inadequate in view of the Supreme Court's decision, (2) permanently enjoining The Citadel and South Carolina from continuing or resuming the male-only admissions policy, and (3) setting a timetable for the development and adoption of a remedial plan for the full integration of women into the Corps of Cadets. The United States also filed a motion, but it requested only a remedial order for the assimilation of women into the Corps of Cadets. The Citadel and South Carolina opposed these motions as moot. They also filed a motion for an order declaring that the July 22, 1994 order (finding that The Citadel had violated the Equal Protection Clause) was moot and dismissing Nancy Mellette's suit on the ground that she had decided months before not to attend The Citadel. The Citadel also submitted a plan to the court for assimilating women into the Corps of Cadets.
 
 
 19
 On August 14, 1996, the district court issued a final remedial order on these motions except the motion to dismiss Mellette's suit. After noting in the order that it had previously found the male-only admissions policy to violate the Equal Protection Clause, the court declared that the parallel program at Converse College did not conform with the Equal Protection Clause of the Fourteenth Amendment; it enjoined The Citadel to adopt a policy that requires the admission of women; and it enjoined The Citadel to develop a plan for the assimilation of women into the Corps of Cadets, subject to court review.
 
 
 20
 After the four female applicants entered the Corps of Cadets in the fall of 1996, two claimed that they had been hazed and, at the end of their first semester, withdrew from The Citadel. In view of the federal government's interest in the case, the government and The Citadel thereafter negotiated a consent decree for the assimilation of female cadets, which was entered on May 23, 1997. This order resolved all issues between the United States and the defendants.
 
 
 21
 From the August 14, 1996 order, The Citadel and South Carolina took this appeal. In addition to challenging the August 14 order, they challenge the district court's orders of July 22, 1994 (declaring the male-only admissions policy unconstitutional), July 24, 1995 (postponing trial of the Converse College program), and October 3, 1995 (granting Mellette's motion to intervene). Mellette filed a crossappeal challenging the district court's order of October 3, 1995 (refusing to certify a class action under Federal Rule of Civil Procedure 23).
 
 II
 
 22
 We address first The Citadel's contention that the district court's August 14, 1996 order should be vacated because of mootness. The Citadel notes that following the Supreme Court's decision in VMI, it not only abandoned the male-only admissions policy but also admitted four women. It argues that the only reason Mellette pursued the order was to enhance her claim for attorneys fees. It also contends that Mellette lacks standing and that a motion to dismiss her claims was, and remains, pending in the district court.
 
 
 23
 The August 14 order was entered on the motions of both Mellette and the government. Mellette's motion sought a declaratory judgment that The Citadel's male-only admissions policy is unconstitutional and that the proposed parallel program at Converse College is "inadequate." It also sought an injunction prohibiting The Citadel from resuming the male-only admissions policy and setting a timetable for the development of a remedial plan under court supervision. The government's motion was limited to a request that the court "identify steps and measures necessary and appropriate for an orderly integration of women into the Corps of Cadets and an implementation schedule."
 
 
 24
 Following a hearing, the district court granted the motions of both Mellette and the government and entered an order on August 14, 1996, which (1) recited the fact that it had held The Citadel's male-only admissions policy unconstitutional in 1994 and had been affirmed in doing so by the Fourth Circuit; (2) declared the proposed parallel program at Converse College in violation of the Equal Protection Clause; (3) enjoined The Citadel to adopt a policy requiring the admission of women to the Corps of Cadets; and (4) enjoined The Citadel to develop a plan "for the assimilation of women," which provides for court review "on a regular, timely basis."
 
 
 25
 Because of the consent order entered between the United States and the defendants on May 23, 1997, while this appeal was pending, The Citadel agreed at oral argument that its challenge to the order granting the government's motion has been waived and is moot. Furthermore, the government has a legitimate interest in enforcing the laws against sexual discrimination, and, in our order in Faulkner v. Jones, 51 F.3d at 448, we remanded the case to the district court to establish a schedule for defendants to "formulate, adopt, and implement a plan that conforms with the Equal Protection Clause ... and to oversee implementation of the state's plan." Notwithstanding the Supreme Court's VMI decision limiting the remedies available and The Citadel's announcement abandoning its male-only admissions policy, the district court had jurisdiction to grant the government's motion to develop an assimilation plan under the court's supervision. Any doubt about whether The Citadel and South Carolina could challenge the court's jurisdiction was eliminated when the defendants voluntarily negotiated with the government and agreed to a consent order adopting a plan. Accordingly, insofar as the August 14 order grants the government's motion and directs The Citadel to develop a plan "for the assimilation of women" under court review, we affirm the order.
 
 
 26
 Insofar as the August 14 order grants Mellette's motion, however, the defendant's position has merit. At the time that the district court granted Mellette's motion, it had before it The Citadel's motion to dismiss Mellette as a plaintiff on the grounds that she lacked standing. The Citadel renews this argument on appeal. It points out, first, that on June 28, 1996, it officially rescinded its male-only admissions policy, meaning that as of that date Mellette was not legally prohibited from attending The Citadel. Furthermore, Mellette acknowledges that in April 1996, she signed a contract with West Point obliging her to attend the United States Military Academy Preparatory School (USMAPS) in Fort Monmouth, New Jersey, for the 1996-1997 school year. This was the first step in Mellette's efforts to receive an appointment to West Point itself. More importantly, in making this commitment, Mellette demonstrated that she had no intention of attending The Citadel. Her only interest in The Citadel in August 1996, when the district court granted her motion, was a hypothetical one based on the possibility that her efforts to attend West Point might fail. In fact, in the spring of 1997 Mellette received an appointment to West Point, where she is currently enrolled. Under these circumstances, we agree with the defendant that Mellette lacks standing to prosecute this lawsuit and, therefore, that the district court's August 14 order granting Mellette's motion is void for lack of jurisdiction.
 
 
 27
 Before a party may pursue a claim in federal court, she must have standing. The standing doctrine derives from the constitutional principle of separation of powers, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 112 S.Ct. 2130, 2135-36, 119 L.Ed.2d 351 (1992), and is directed at the question "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In order to have standing, a plaintiff must meet three criteria:
 
 
 28
 First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 
 
 29
 Lujan, 504 U.S. at 559-61, 112 S.Ct. at 2136 (alteration in original) (citations, internal quotation marks, and footnote omitted). The party seeking to establish standing carries the burden of demonstrating each of these three elements. Id. at 561, 112 S.Ct. at 2136-37.
 
 
 30
 In this case, the injury originally suffered by Mellette was The Citadel's refusal to admit her into its Corps of Cadets because of her sex. In light of The Citadel's subsequent adoption of a coeducational admissions policy in June 1996 and Mellette's own decision in April 1996 to attend USMAPS, however, we do not believe that as of August 1996 when the district court granted her motion, Mellette was suffering from any "injury" which met the requirements set forth by the Supreme Court in Lujan. As explained above, to meet the requirements of the standing doctrine, a party's injury must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." Once The Citadel removed the barriers which prevented Mellette from attending the school, and once Mellette herself decided to attend another military college, she ceased to possess standing to sue for Article III purposes. Consequently, when the district court granted her motion it lacked jurisdiction and, therefore, the part of its August 1996 order granting Mellette's motion is void.
 
 
 31
 Moreover, the second prong of the district court's August 14 order, declaring that the proposed parallel program at Converse College violated the Equal Protection Clause, followed from no prior trial or factfinding. Indeed, in the summer of 1995, after South Carolina decided that it would propose a parallel program at Converse College, the court concluded that discovery had not been sufficiently completed on the subject to try the case and review the program. To remedy that deficiency, the court postponed trial until November 1995. That trial date was subsequently stayed pending Supreme Court review of the VMI case. To date, no trial has been conducted on the parallel program. More importantly, however, no trial is now necessary because South Carolina has abandoned its pursuit of the proposed parallel program for women at Converse College as a remedy and has decided instead to admit women to The Citadel. We conclude that for this reason also the district court had no basis to find that the abandoned program at Converse College, on which it had never conducted a hearing, was inadequate.
 
 
 32
 In its August 14 order, the district court also granted Mellette's motion for injunctive relief. But, again, we have been directed to no evidence that the injunction was necessary or justified. Nothing in the record indicates that The Citadel had any intention of returning to a male-only admissions policy. Indeed, all of the evidence points the other way. The Citadel adopted a policy of co-education immediately after the Supreme Court's decision in VMI; it announced the change and actively solicited applications from women; and it admitted four women in the fall of 1996. Its intent not to return to the male-only admissions policy was manifested again later when it negotiated and agreed to a consent decree with the government, to which it is now legally bound, addressing assimilation problems. While it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit, see Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 71-72, 104 S.Ct. 373, 375-76, 78 L.Ed.2d 58 (1983), the Citadel and South Carolina have pointed to powerful evidence that " 'there is no reasonable likelihood that the wrong will be repeated.' " Id. (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897-98, 97 L.Ed. 1303 (1953) (citation omitted)); see also County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). We note additionally that the United States, which does have standing on these matters, has not argued that South Carolina and The Citadel are likely to revert to the male-only policy. It has argued only that the decision to admit women includes within it a requirement that the court adopt a meaningful plan to make the policy work.
 
 
 33
 For all of the reasons given, we vacate the provisions of the district court's August 14, 1996 order declaring that the proposed parallel program at Converse College violates the Equal Protection Clause and enjoining The Citadel from continuing its formerly male-only admissions policy, and we affirm the remainder of that order.
 
 III
 
 34
 The Citadel and South Carolina also request that we vacate the district court's orders of July 22, 1994 (finding that defendants violated the Equal Protection Clause), July 24, 1995 (delaying trial on the parallel program at Converse College), and October 3, 1995 (granting Mellette's motion to intervene). We have already reviewed the July 1994 order, see Faulkner v. Jones, 51 F.3d at 450, and refuse to do so again. Moreover, we find that the district court's July 1995 order regulating discovery and scheduling the trial date, as well as its October 1995 order allowing Mellette to intervene, are matters of discretion, on which we find no abuse. See Ardrey v. United Parcel Serv., 798 F.2d 679, 682 (4th Cir.1986) (district court's discovery orders reviewed for abuse of discretion); Hill v. Western Elec. Co., Inc., 672 F.2d 381, 385-86 (4th Cir.1982) (district court's intervention determinations reviewed for abuse of discretion); Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 978 (10th Cir.1996) (district court's scheduling orders reviewed for abuse of discretion).
 
 
 35
 Similarly, on Mellette's cross-appeal seeking to review the district court's October 1995 order refusing to certify a class action in this case, we affirm. Not only does Mellette lack standing to represent a class, but she has also not demonstrated that the district court abused its discretion. See In re A.H. Robins Co., Inc., 880 F.2d 709, 728-29 (4th Cir.1989) (noting that district court's class action certification determinations are reviewed for abuse of discretion).
 
 
 36
 In summary, we vacate a portion of the August 14, 1996 order and affirm the remainder, and we affirm the district court's orders of July 22, 1994, July 24, 1995, and October 3, 1995.
 
 
 37
 IT IS SO ORDERED.