**VIRGINIA SOCIETY FOR HUMAN LIFE, INC., Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**No. CIV.A. 3:99CV559.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 4, 2000.

John Lyons Marshall, Jr., McSweeney, Burtch & Crump, Patrick Michael McSweeney, McSweeney, Burtch And Crump, Richmond, James Bopp, Jr., Bopp, Coleson & Bostrom, Terre Haute, IN, for Virginia Society for Human Life, Inc., plaintiff.

Stephen E. Hershkowitz, Federal Election Commission, Lawrence M. Noble, Federal Election Commission, Richard B. Bader, Federal Election Commission, Office of General Counsel, Washington, DC, for Federal Election Commission, defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER is before the Court on cross-Motions for Summary Judgment and a Motion to Dismiss. For the reasons discussed below,

1. the Motion for Summary Judgment brought by Plaintiff VIRGINIA SOCIETY FOR HUMAN LIFE, INC. (herein "VSHL") is GRANTED;

2. the Motion for Summary Judgment brought by Defendant FEDERAL ELECTION COMMISSION (herein "FEC") is DENIED;

3. the Motion to Dismiss brought by the FEC is DENIED.

The FEC is hereby ENJOINED from enforcing 11 C.F.R. § 100.22(b) against the VSHL or against any other party in the United States of America.

## I. Background

The VSHL is a non-profit, tax-exempt Virginia corporation established "to educate the general public on issues relating to the protection of individual human life regardless of stage of development or state of dependency, and to promote the pro-life cause however possible within the bounds of the law." (Compl. ¶ 7.). To further these objectives, the VSHL undertakes a variety of public relations measures in both election years and non-election years, all of which are funded by the VSHL treasury. (Id. ¶¶ 9, 10.). While the VSHL has no formal policy regarding corporate donations to its treasury, it has accepted donations from corporations in the past and anticipates doing so in the future. (Id. ¶ 8.). The VSHL is not associated with any political party, candidate or campaign committee, nor does it coordinate its public relations activities with any political party, candidate or campaign committee. (Id. ¶¶ 5, 9.). The VSHL reports that it plans to distribute "voter guides" in connection with the upcoming federal election cycle. (Id. ¶ 12.). These voter guides "will not contain any express or explicit words of advocacy of the nomination, election, or defeat of any candidate. The voter guides will tabulate candidates' positions on abortion-related issues ...." (Id. ¶ 13.). The VSHL acknowledges that a recipient of a voter guide could reasonably discern the VSHL's preferences as to the election or defeat of a particular candidate, but it insists that the voter guides will not call expressly for "a vote for or against any candidate"; the voter guides will simply outline the VSHL's stance on various issues relating to abortion. (Id. ¶¶ 14–15.). While the VSHL does not state in the Complaint where it intends to distribute these voter guides, it notes in subsequent pleadings that it has never decided to distribute them only within the Fourth Circuit; the VSHL also plans to purchase radio advertising which might be heard by persons residing outside of the Fourth Circuit. (Pl.'s Resp. to Mot. to Dismiss §§ I, I(A).).

The FEC is an independent agency created by the Federal Election Campaign Act (herein the "FECA"), 2 U.S.C. §§ 431 et seq. The FECA prohibits corporations from making "expenditure[s] in connection with any [federal] election ...." 2 U.S.C. § 441b(a). The Supreme Court has interpreted this prohibition to bar only that corporate spending which contains express or explicit words of candidate advocacy. See FEC v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 249, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); Buckley v. Valeo, 424 U.S. 1, 44, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). On October 5, 1995, the FEC promulgated 11 C.F.R. § 100.22(b) pursuant to its statutory duty to enforce the FECA. (Compl.¶ 6.). Subsection (b) (herein the "regulation") supplements § 100.22(a), which sets forth a number of activities held by the FEC to constitute "express advocacy" (and thus subject to regulation by the FEC if conducted by a corporation):

*Expressly advocating* means any communication that—

(a) Uses phrases such as "vote for the President," "re-elect your Congressman," "support the Democratic nominee," "cast your ballot for the Republican challenger for U.S. Senate in Georgia," "Smith for Congress," "Bill McKay in '94," "vote Pro-life" or "vote Pro-choice" accompanied by a listing of

clearly identified candidates described as Pro–Life or Pro–Choice, "vote against Old Hickory," "defeat" accompanied by a picture of one or more candidate(s), "reject the incumbent," or communications of campaign slogan(s) or individual word(s), which in context can have no other reasonable meaning than to urge the election or defeat of one. or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. . which say "Nixon's the One," "Carter '76," "Reagan/Bush". or "Mondale!"

(b) when taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because—

> (1) The electoral ·portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
>
> 2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action.

11 C.F.R. §§ 100.22(a)-(b) (emphasis original). The regulation was challenged immediately in several federal courts, which have held uniformly that the regulation (and/or the analysis underlying the regulation) is unconstitutional. The VSHL filed a Petition ·for Rulemaking on January 11, 1999, asking the FEC to repeal the regulation. (Compl.¶¶ 28, 41.). Although it solicited comments as to whether the regulation should be repealed, the FEC declined to do so by a 3–to–3 vote of the Commissioners. (*Id.* ¶ 42.). The VSHL filed the instant Complaint on August 9, 1999. The Complaint prays for a judgment

> (a) declaring [the regulation] to be unconstitutionally overbroad, void-for-vagueness and contrary to law on the grounds that it violates the First and Fifth Amendments to the Constitution of the United States and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706, and that it exceeds the [FEC's]statutory authority under [FECA]; (b) overturning the FEC's failure to act on VSHL's petition for rulemaking in which VSHL petitioned the FEC to repeal the regulation; (c) setting aside the regulation under 5 U.S.C. § 706; and (d) permanently enjoining the [FEC] from enforcing the FECA based on the regulation and from relying on or citing the regulation as legal authority in any future enforcement action.

(*Id.* ¶ 2.). The VSHL brought its Motion for Summary Judgment on October 6, 1999. The FEC brought a Motion to Dismiss on October 12, 1999, and a cross-Motion for Summary Judgment on October 22, 1999.

## II.  Standards of Review·

### A.· Motions for Summary Judgment

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit,

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue

is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) .... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (emphasis original). Finally, summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## B. Motions to Dismiss

A plaintiff bears the burden of proving that the federal district court has subject matter jurisdiction over his or her claim; this burden does not shift when defendants challenge the assertion of jurisdiction by a federal district court. *Materson v. Stokes*, 166 F.R.D. 368, 370 (E.D.Va.1996). The non-movant has the burden of alleging and proving subject matter jurisdiction upon the filing of a motion to dismiss for lack of such jurisdiction. *Marks v. U.S. Social Sec. Admin.*, 906 F.Supp. 1017, 1020 (E.D.Va.1995). The function of motions to dismiss is to test the law governing claims, not the facts which support them. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Spell v. McDaniel*, 591 F.Supp. 1090 (E.D.N.C. 1984). The Court should not dismiss any count unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *See Doby v. Safeway Stores, Inc.*, 523 F.Supp. 1162 (E.D.Va.1981); *Austin v. Reynolds Metals Co.*, 327 F.Supp. 1145 (E.D.Va.1970).

■ Federal courts enjoy subject matter jurisdiction only over those cases which concern actual cases or controversies. *See* U.S. Const.Art.III; *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir.1997). Essential to a finding that a case or controversy is present in a given case is a showing that a party has standing to sue. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). For a party to have standing, all three of the following elements must exist: (1) an injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision of the court. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130; *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998). The party invoking federal jurisdiction must demonstrate that the elements of standing exist. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. Standing must exist when the original pleading is filed. *Id.* at 571 n. 4, 112 S.Ct. 2130.

## III. Analysis

The Court must make two determinations before it may consider the constitutionality of the challenged regulation: (1) whether the VSHL has standing to challenge the regulation; and (2) whether the VSHL has pleaded its Motion for Summary Judgment sufficiently, in accordance with the Local Rules. For the reasons discussed below, the Court finds in favor of the VSHL on both of these inquiries, and also as to the constitutionality of the challenged regulation. The Court need not rule upon the FEC's dismissal of the VSHL's Petition for Rulemaking in order to hold in favor of the VSHL on the cross-Motions for Summary Judgment.

### A. Standing

■ The FEC argues that the Complaint should be dismissed for lack of subject matter jurisdiction, on the ground that the VSHL lacks standing to sue. (Def.'s Mot. to Dismiss ¶ 1.). The FEC maintains that the VSHL lacks standing because it cannot demonstrate an injury-in-fact, one

of the three bedrock requirements for a demonstration of standing. (Def.'s Mot. to Dismiss Mem. § II(B). *See also Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *Burke v. City of Charleston,* 139 F.3d 401, 405 (4th Cir.1998).). According to the Supreme Court, an injury-in-fact is an invasion of a legally protected interest which is concrete and particularized; this invasion must be actual or imminent, not conjectural or hypothetical. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (*quoting Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).). *See also United States v. Jones,* 136 F.3d 342, 348 (4th Cir.1998).

The FEC grounds this argument largely upon its own decision not to enforce the regulation in either the First or Fourth Circuits, which have both reportedly held the regulation to be unconstitutional. (Def.'s Mot. to Dismiss Mem. § II(B).). The FEC argues that because the VSHL will not be prosecuted by the FEC in the Fourth Circuit, where the VSHL is based, it cannot meet the Supreme Court's standard for an injury-in-fact, and thus it lacks standing to sue. (*Id.*). The FEC notes the Fourth Circuit's recent holding in *North Carolina Right to Life, Inc. v. Bartlett,* in which it held that plaintiffs bringing pre-enforcement challenges to a statute or regulation enjoy standing to sue only if they face "a credible threat of prosecution" by the enforcing government agency. *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 710 (4th Cir.1999). The FEC also notes the Supreme Court's decision in *Babbitt v. United Farm Workers National Union,* in which it held that plaintiffs having no fear of government prosecution "except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (*quoting Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). The FEC also cites a number of cases to support the proposition that an agency's express disavowal of any intention to enforce a statute eliminates any reasonable fear a party may have of prosecution under that statute. (Def.'s Mot. to Dismiss Mem. § II(B).). As it has decided not to enforce the regulation in the VSHL's home circuit, the FEC argues that the VSHL cannot demonstrate an injury-in-fact. (*Id.*).

Upon further examination, however, the FEC's argument crumbles. First, the VSHL has never indicated that it plans to distribute voter guides within the Fourth Circuit exclusively, nor that its other communications would not reach federal circuits in which the FEC is enforcing the regulation. (Pl.'s Resp. § II.). Indeed, the VSHL plans to broadcast radio advertisements in connection with the upcoming federal election from a radio station in the District of Columbia. (*Id.* § II(A).). While the VSHL does not say so expressly, broadcasts from this location will certainly be heard by residents of the Fourth Circuit (Virginia and Maryland), the D.C. Circuit, and possibly by residents of the Third Circuit (Pennsylvania). The FEC continues to enforce the regulation in both the Third Circuit and the D.C. Circuit. The VSHL notes that the FEC is empowered to "institute a civil action . . . in the district court of the United States for the district in which the person against whom such action is brought is found, resides, or *transacts business.*" 2 U.S.C. § 437g(a)(6)(A) (emphasis added). As observed by the VSHL, the FEC has chosen to bring enforcement actions in the districts where potential violators have transacted business on numerous occasions, rather than in the districts where those parties were found or resided. (Pl.'s Resp. § II(A).). The VSHL therefore reasonably fears prosecution by the FEC in the District of Columbia, both for its radio advertisements and for any advertising collaborations between the VSHL and D.C.-based organizations, such as the National Right to Life Committee. (*Id.*). While the FEC argues that any fear of prosecution in the District of Columbia is

too speculative to be "imminent," this fear appears to be perfectly reasonable. The VSHL has stated that it plans to broadcast in D.C., and it has never stated that its voter guides shall be distributed only within the confines of the Fourth Circuit.

The FEC's argument also fails to consider the prospect of FECA litigation initiated by private citizens within the Fourth Circuit. Any person may file a complaint with the FEC if that person suspects a violation of the FECA, and to challenge the FEC's decision not to enforce in the United States District Court for the District of Columbia. 2 U.S.C. §§ 437g(a)(1),(8)(A). The D.C. Circuit recognized this possibility in *Chamber of Commerce of the United States v. FEC,* in which it dismissed the FEC's contention that no enforcement actions could be forthcoming absent a majority vote of the Commissioners. *Chamber of Commerce of the United States v. FEC,* 69 F.3d 600, 603 (D.C.Cir.1995). Noting the FECA's unusual provision allowing challenges by private parties, the D.C. Circuit noted that "even without a Commission enforcement decision, appellants are subject to litigation challenging the legality of their actions if contrary to the Commission's rule." *Id.* It is therefore possible for the VSHL to face litigation stemming from its activities in the Fourth Circuit even if the FEC decides not to enforce the regulation here. A private party may bring a complaint before the FEC on the basis of the VSHL's activities within the Fourth Circuit; if the FEC decides not to bring an enforcement action for these Fourth Circuit-specific activities, the private party may appeal this decision to the United States District Court for the District of Columbia. It therefore makes little difference where the FEC chooses to enforce the regulation—the VSHL has a "credible threat of prosecution," and thus has standing to bring a pre-enforcement challenge in this case. The FEC devotes much energy at oral argument to characterizing the threat of pre-enforcement challenges by

private parties as remote or unlikely, but—even if these characterizations can be accepted as true—such challenges still pose a very real threat of prosecution. An enforcement action under the FECA need not prevail in order to cast an unacceptable pall upon free speech; the mere possibility that such a challenge may be brought by a private citizen is enough to do so.

The Fourth Circuit's recent decision in *North Carolina Right to Life* demonstrates why the VSHL has standing in this case:

> When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute. A nonmoribund statute that "facially restrict[s] expressive activity by the class to which the plaintiff belongs" presents such a credible threat, and a case or controversy thus exists in the absence of compelling evidence to the contrary. This presumption is particularly appropriate when the presence of a statute tends to chill First Amendment rights.

*North Carolina Right to Life, Inc.,* 168 F.3d at 710 (alteration in original) (*quoting New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 15 (1st Cir.1996)). The mere existence of the regulation chills potential speech, and this chill does not dissipate merely because the FEC has decided—at present—not to enforce the regulation within the Fourth Circuit. Such non-binding decisions offer little comfort to those who wish to speak freely in the public square. For these reasons, the FEC's Motion to Dismiss for Lack of Standing is DENIED.

**B. Sufficiency of Pleadings**

The FEC argues that the VSHL has not pleaded its Motion for Summary Judgment sufficiently, and thus that the Motion should be dismissed as a matter of law.

(Def.'s Summ J. Mem.[1] § II.). The FEC contends that the VSHL has offered no evidence to support any of the factual allegations made in its Memorandum in Support of Motion for Summary Judgment, in apparent violation of Local Rule 56. (*Id.*). Local Rule 56(B) requires any parties moving for summary judgment to include "a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." E.D. VA. R. 56(B). The FEC argues that by neglecting to submit copies of its Petition for Rulemaking or of the FEC General Counsel's Memorandum to the Commission, the VSHL has not met its burden under Local Rule 56(B). (Def.'s Mem. § II.). The FEC argues that this failure alone is grounds for the Court to deny the VSHL's Motion for Summary Judgment. (*Id.*).

A cursory look at the VSHL's Memorandum in Support of Motion for Summary Judgment demonstrates that the FEC's argument is without merit. The VSHL has indeed provided a section in its Memorandum in Support of Motion for Summary Judgment entitled "List of Undisputed Facts Required by Local Rule 56(B)." (Pl.'s Summ. J. Mem. § I.). This section refers to a number of material facts, virtually all of which are supported by a specific citation to the Complaint, to a statute, to a regulation, or to case law. (*Id.*). While the VSHL has not submitted a copy of its Petition for Rulemaking or of the FEC General Counsel's Memorandum to the Commission, neither document appears to be required under the terms of Local Rule 56(B) in order to grant the VSHL's Motion for Summary Judgment. Assuming that it has devoted a section in its brief to all material facts as to which there is allegedly no genuine issue, a party seeking summary judgment need only cite the parts of

the record relied upon to show that certain material facts are not in dispute. E.D. VA. R. 56(B). None of the facts asserted by the VSHL in its Memorandum appear to depend upon the contents of its Petition for Rulemaking or the FEC General Counsel's Memorandum to the Commission to demonstrate that they are not in dispute. Nor does the VSHL appear to cite documents which have not been made part of the record. Indeed, the VSHL makes specific reference to its attachments to the Complaint, which include an FEC Notice clarifying the agency's position on the term "express advocacy." (Pl.'s Summ. J. Mem. § I, ¶ 15, *citing* FEC Notice 1998–6, at 3, February 13, 1998, attached as "Exhibit A" to Complaint.). For these reasons, it appears clear that the VSHL has complied with Local Rule 56(B), and thus the FEC's argument as to sufficiency of pleadings is without merit.

## C. Validity of the Regulation

█ As noted above, the FEC has expanded its definition of "express advocacy" to include communications that

(b) when taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because—

(1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and

2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action.

11 C.F.R. § 100.22(b). The FEC adopted the regulation on the basis of the Ninth

1. This memorandum would ordinarily be referred to as "Defendant's Response" or "Def.'s Resp.", but the FEC has consolidated its response to the VSHL's Motion for Summary Judgment along with its own Memorandum in Support of Summary Judgment. The memorandum is therefore designated "Def.'s Summ. J. Mem."

Circuit's decision in *FEC v. Furgatch,* in which the Ninth Circuit concluded that the phrase "don't let him do it" in an ad critical of a particular candidate constituted "express advocacy." *FEC v. Furgatch,* 807 F.2d 857, 864–65 (9th Cir.1987), *cert. denied,* 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 106 (1987). The FEC relied on the following passage from *Furgatch* in creating the regulation:

> We conclude that speech need not include any of the words listed in *Buckley* [*v. Valeo,* discussed below] to be express advocacy under the Act, but it must, when read as a whole, and with limited reference to external events, be susceptible of no other reasonable interpretation but as an exhortation to vote for or against a specific candidate. This standard can be broken into three main components. First, even if it is not presented in the clearest, most explicit language, speech is "express" for present purposes if its message is unmistakable and unambiguous, suggestive of only one meaning. Second, speech may only be termed "advocacy" if it presents a clear plea for action, and thus speech that is merely informative is not covered by the Act. Finally, it must be clear what action is advocated. Speech cannot be "express advocacy of the election or defeat of a candidate" when reasonable minds could differ as to whether it encourages a vote for or against a candidate or encourages the reader to take some other kind of action.

*Furgatch,* 807 F.2d at 864 (alteration added).

This regulation is blatantly unconstitutional, despite the Ninth Circuit's holding in *Furgatch.* The Court looks first to the Supreme Court's decision in *Buckley v. Valeo,* in which it ruled upon the constitutionality of various provisions within the FECA. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The *Buckley* Court drew a key distinction between types of advocacy. "Express advocacy" was defined as "communications that in express terms advocate the election or defeat of a clearly identified candidate for federal office," and thus funds spent on such advocacy could be regulated by the FEC. *Buckley,* 424 U.S. at 44, 96 S.Ct. 612. Funds spent on "issue advocacy," by contrast, could not be regulated by the FEC, for the following reasons:

> Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered exchange of ideas for the bringing about of political and social changes desired by the people."

*Id.* at 14, 96 S.Ct. 612 (*quoting Roth v, United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).). The *Buckley* Court ruled that express advocacy contains explicit words of advocacy or defeat ("such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject,' etc."), whereas issue advocacy does not contain such words. *Id.* at 44 n. 2, 96 S.Ct. 612. The *Buckley* Court recognized that the line between express advocacy and issue advocacy could be a fuzzy one, but it argued against classifying advocacy according to an audience's reasonable interpretations of the communication at issue. *Id.* at 43, 96 S.Ct. 612. In the *Buckley* Court's view, "no speaker, under such circumstances, safely could assume that anything he might say upon the general subject would not be understood by some as an invitation." *Id.* The Fourth Circuit echoed this view when it ruled that by blurring the boundary between express (i.e., regulated) advocacy and issue (unregulated) advocacy, "the right of citizens to engage in the vigorous discussion of issues of public interest without fear of reprisal would be intolerably chilled." *FEC v. Christian Action Network,* 110 F.3d 1049, 1051 (4th Cir.1997) (herein *CAN II* ). The Supreme Court applied the *Buckley* "express advo-

cacy" test to communications by non-profit corporations in *FEC v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986).

The regulation allows the FEC to regulate communications that do not contain express or explicit words of advocacy as required under *Buckley,* and thus not only exceeds the FEC's statutory authority under the FECA but also runs afoul of the First Amendment. By allowing the FEC to regulate advocacy based upon the understandings of the audience rather than the actual message of the advocate, the regulation trips over the *Buckley* test, which seems clearly to have been designed in order to prevent such an occurrence. While an advocate may have a reasonable understanding of his or her own message, no one can say for certain how that message will be filtered into the minds of its recipients. Even the Ninth Circuit's decision in *Furgatch* acknowledges that express advocacy must contain a "clear plea for action," but the regulation contains no such requirement—it in fact is broader than *Furgatch,* which itself appears to run afoul of the *Buckley* test. Of even greater concern, however, the FEC has adopted a regulation which empowers it in effect to delve into a realm clearly forbidden by *Buckley:* the realm of issue advocacy regulation. As worded presently, the regulation includes within the broad sweep of "express advocacy" all communications clearly understood to be for or against one or more candidates, as well as any communication which "encourages some other kind of action." 11 C.F.R. § 100.22(b). Such language clearly permits the FEC to regulate activities at the heart of issue advocacy, and the FEC's assurances to the contrary do not rid the regulation of its clearly unconstitutional scope. Public debate concerning significant issues of the day is a fundamental requirement of republican democracy. Public debate requires uninhibited discussion, and such discussion—by design and by necessity—often calls for action of some type in the public arena. An enforcement action (by the FEC or by a private citizen) need not loom on the horizon for participants in the public arena to feel the chill generated by this unconstitutional encroachment upon free speech. For these reasons, the regulation violates the First Amendment and is invalid.

## IV. Conclusion

The Court hereby GRANTS the VSHL's Motion for Summary Judgment and DENIES the FEC's Motion for Summary Judgment. In addition, First Amendment protections do not cease at the boundaries of the Eastern District, and the Court is unwilling to perpetuate the state of uncertainty faced across the land by potential participants in the public arena. The FEC is hereby ENJOINED from enforcing 11 C.F.R. § 100.22(b) against the VSHL or against any other party in the United States of America.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.