Jerry FALWELL, as Pastor of Thomas Road Baptist Church, and the Trustees of Thomas Road Baptist Church, Plaintiffs,

v.

CITY OF LYNCHBURG, VIRGINIA; Jerry Kilgore,[1] in his official capacity as Attorney General of Virginia; Clinton Miller, in his official capacity as Chairman of the State Corporation Commission; Larry B. Palmer, in his official capacity as Clerk of the Court for the 24th Judicial Circuit; Honorable M.G. Perrow, III, in his official capacity as Chief Judge of the 24th Judicial Circuit; and William Petty, in his official capacity as Commonwealth Attorney for the City of Lynchburg, Defendants.

No. CIV. A. 6:01CV00075.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Feb. 8, 2002.

and Two is without prejudice because it was necessitated by a lack of standing.

1. Jerry Kilgore became the Attorney General of Virginia, effective January 12, 2002. Under Fed. R. Civ. Proc. 25(d)(1) and 42 U.S.C. § 405(g), Mr. Kilgore is substituted automatically for Randolph A. Beales as the Defendant in this action.

768

Jerry Falwell, Jr., Lynchburg, VA, Mathew D. Staver, Joel L. Oster, Erik W. Stanley, Longwood, FL, for plaintiffs.

Walter C. Erwin, III, Lynchburg, VA, William Henry Hurd, Office of Atty. Gen. Richmond, VA, Alexander Wayne Bell, Mary V. Barney, Law office of Alexander W. Bell, Lynchburg, VA, for City of Lynchburg, defendant.

William Henry Hurd, Office of Atty. Gen., Richmond, VA, for Randolph A. Beales, Jerry W. Kilgore, defendants.

Rebecca K. Glenberg, ACLU of Virginia, Richmond, VA, for American civil Liberties Union of Virginia, Inc., amicus.

H. Robert Showers, Greber, Simms & Showers Leesburg, VA, Stuart J. Lark, Gregory S. Baylor, Christian Legal Society, Annandale, VA, for Southern Baptist Conservatives of Virginia, Christian Legal Society, amicus.

Guy Winston Horsley, Jr., Office of Atty. Gén., Richmond, VA, Philip R. de Haas, State Corp. Com'n, Richmond, VA, for Clinton Miller, defendant.

William F. Etherington, Beale, Balfour, Davidson & Etherington, P.C., Richmond, VA, for Larry B. Palmer, defendant.

Elaine Scott Moore, Office of Atty. Gen., Richmond, VA, for M.G. Perrow, defendant.

Edward Meade Macon, Office of Atty. Gen., Richmond, VA, for William Petty, defendant.

## OPINION

MOON, District Judge.

### I. INTRODUCTION

In this case, Rev. Jerry Falwell and the Trustees of Thomas Road Baptist Church raise significant First Amendment concerns about certain Virginia laws, the histories of which trace their roots to the founding of the republic and the pen of Thomas Jefferson. In response, some De-

fendants assert the doctrine of sovereign immunity which, though a less noted constitutional issue, is no less important. In addition, this Court must analyze this case in accordance with the case or controversy requirement of Article III, in order to determine whether it may consider the merits of Plaintiffs' claims at all.

Having examined each of these questions, the Court concludes that the Plaintiffs have alleged that the Defendants may, at some future time, via some hypothetical mechanism, injure them in some indeterminable manner.

Because these allegations do not as yet present a case or controversy, and Article III of the United States Constitution prohibits this Court from rendering advisory opinions on nonjusticiable matters, the following Defendants must be dismissed from this case: the Attorney General, the Commonwealth's Attorney for the City of Lynchburg, the Chief Judge of the 24th Judicial Circuit, and the Clerk of the 24th Judicial Circuit.

Finally, because the City of Lynchburg has repealed its challenged ordinance, the Plaintiffs' claims against the City must be dismissed as moot.

## II. FACTS AND PROCEDURAL BACKGROUND

Since 1956, Thomas Road Baptist Church, and its Pastor, Rev. Jerry Falwell, have provided a home for Christian prayer, worship, and education for the people of Lynchburg, Virginia, the nation, and the world. Today, the Trustees of Thomas Road Baptist Church own the Church and its sanctuary, which stands on 28.88 acres in a residentially-zoned area of the City of Lynchburg. Because the Trustees believe the Church to have outgrown its current sanctuary, they have started to construct a new facility on approximately sixty acres elsewhere in Lynchburg. The Trustees hold title to the land on which the current sanctuary stands, and seek to take title to the sixty-acre tract on which the new sanctuary will be located.

In doing so, the Plaintiffs contend that a provision of the Constitution of Virginia, two statutes of the Code of Virginia, and an ordinance of the City of Lynchburg frustrate their plans. The Trustees and Rev. Falwell argue that these provisions violate the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000, *et seq.* (West 2001). In this suit, the Plaintiffs seek declaratory and injunctive relief against the following four laws on their faces and as applied:

(1) The portion of Article IV, § 14(20) of the Virginia Constitution which reads as follows: "The General Assembly shall not grant a charter of incorporation to any church or religious denomination . . . ;"

(2) Va.Code Ann. § 57–12 (Michie 2001),[2] which imposes limits on (a) the

---

**2.** Va.Code Ann. § 57–12 reads:

Such trustees shall not take or hold at any one time more than 15 acres of land in a city or town, nor more than 250 acres outside of a city or town and within the same county. The city or town council of any city or town may by ordinance, however, authorize such trustees to take and hold in such city or town not more than 50 acres of land at any one time if such acreage is to be devoted exclusively, and is subsequently so devoted, to a church building, chapel, cemetery, offices exclusively used for adminis-

trative purposes of the church, a Sunday-school building and playgrounds therefor, and parking lots for the convenience of those attending any of the foregoing, and a church manse, parsonage or rectory; such trustees of a church diocese may take or hold not more than 250 acres in any one county at any one time; and they shall not take or hold money, securities or other personal property to the extent that such taking or holding causes the money, securities or other personal property held at the time of taking by such trustees to exceed in the

amount of real property that a church may own, and (b) the amount of personal property that a church may own,

(3) Va.Code Ann. § 57–15,[3] which provides that trustees of a church may not sell church land or engage in certain other real estate transactions without a finding, in a circuit court of the Commonwealth, that the sale or other transaction is the wish of the church or congregation, and

(4) § 18–46 of the City Code of Lynchburg,[4] which, prior to its repeal, prohibited a church from owning more than fifty acres of land.

In challenging the offending provisions, the Trustees and Rev. Falwell first sought declaratory, preliminary, and permanent injunctive relief against the City of Lynchburg and the Attorney General of Virginia. After the Plaintiffs filed their initial Complaint on November 9, 2001, the City of Lynchburg, acting through its City Council, repealed § 18–46 on November 27. In an accompanying report, City Attorney Walter C. Erwin first noted that the City

adopted § 18–46 in 1985 "at the request of local churches," who wished to own up to the statutory maximum of fifty acres. Mr. Erwin concluded with the following statement: "In order to help the City try to get out of the lawsuit, the City Attorney's Office recommends that City Council repeal Section 18–46 of the City Code. If the State statutes are found to be constitutional the City can reenact Section 18–46 at the appropriate time."

Subsequent to their initial complaint, the Plaintiffs filed an Amended Complaint which added, in their official capacities, the following defendants: Clinton Miller, Chairman of the State Corporation Commission, Larry B. Palmer, Clerk of the Court of the 24th Judicial Circuit, M.G. Perrow, III, Chief Judge of the 24th Judicial Circuit, and William Petty, Commonwealth's Attorney for the City of Lynchburg.

In response to Plaintiffs' Complaint, the following Defendants moved to dismiss this case for lack of subject matter juris-

---

aggregate, exclusive of the books and furniture aforesaid, the sum of ten million dollars. Where two or more religious congregations, churches or religious societies shall merge or consolidate, such religious congregation, church or religious society so merged or consolidated, shall have three years' time within which to dispose of its land in excess of that which it is permitted to hold under this section. . . .

3. Va.Code Ann. § 57–15 reads, in relevant part:

The trustees of a . . . church or religious denomination . . . in whom is vested the legal title to such land . . . may file their petition in the circuit court of the county or the city wherein the land . . . lies . . . asking leave to sell, encumber, extend encumbrances, improve, make a gift of, or exchange the land, or a part thereof, or to settle boundaries between adjoining property by agreement. Upon evidence being produced before the court that it is the wish of the congregation, or church or religious denomination or society . . . to sell, ex-

change, encumber, extend encumbrances, make a gift or, improve the property or settle boundaries by agreement, the court shall make such as order as may be proper . . . .

4. § 18–46 read, in relevant part:

Trustees of any religious organization, church or religious society, or branch or division thereof, heretofore or hereafter appointed in accordance with the laws of the state to hold the legal title to the land in the city of any such religious congregation, church or religious society, or any branch or division thereof, may take and hold in the city such land, not exceeding fifty (50) acres at any one time, if such acreage is to be devoted exclusively, and is subsequently so devoted, to a church building, chapel, offices exclusively used for administrative purposes of the church, a Sunday School building and playgrounds therefor and parking lots for the convenience of those attending any of the foregoing.

diction: the Attorney General, Judge Perrow, and Mr. Petty. Mr. Palmer has moved for summary judgment, and Chairman Miller responded to Plaintiffs' Complaint but did not move for its dismissal. Finally, the City of Lynchburg seeks to dismiss this case on a suggestion of mootness and for lack of subject matter jurisdiction.

## III. DISCUSSION

### A. DEFENDANTS' MOTIONS TO DISMISS AND THE COURT'S SUA SPONTE INQUIRY

#### 1. STANDARD OF REVIEW

District courts have original jurisdiction over all civil actions arising under the Constitution and laws of the United States. 28 U.S.C. § 1331. *See also* U.S. Const. art. III, § 2. A court may consider matters of subject matter jurisdiction either upon a defendant's motion, *see* Fed. R. Civ. Proc. Rule 12(b)(1), or *sua sponte, see* Rule 12(h)(3).[5] In this case, Defendants Kilgore, Perrow, Petty, and the City of Lynchburg move to dismiss this action pursuant to Rule 12(b)(1). The Court shall begin with the first three Defendants and Defendant Palmer; it will consider the City of Lynchburg's Motions, *infra,* in Section B.

█ Both sovereign immunity and standing lie at the heart of federal subject matter jurisdiction, and many of the same facts are relevant to both inquiries. Nevertheless, while Defendants Kilgore, Perrow, and Petty base their 12(b)(1) Motions largely upon sovereign immunity, this Court, *sua sponte,* shall first determine whether Plaintiffs have presented a case or controversy with respect to the Defendants. "It is well settled that a federal court is obligated to inquire into subject

matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). *See United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("The question of standing is not subject to waiver.... 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the [jurisdictional] doctrines.'"); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

█ Only a minimal amount of case law discusses the standard of review that courts must apply to a standing analysis. Nevertheless, when standing becomes an issue in the contexts of a motion to dismiss, "general *factual* allegations of injury" may be sufficient to show standing. *Bischoff v. Osceola Cty., Fla.,* 222 F.3d 874, 878 (11th Cir.2000) (emphasis added). In a motion to dismiss, plaintiffs are accorded more latitude to state a claim than in motions for summary judgment, where a court examines evidence, not merely pleadings, in the light most favorable to plaintiffs. *Id.* (citing *Haase v. Sessions,* 835 F.2d 902 (D.C.Cir.1987)). In this case, because the Court is examining standing in the context of Defendants' Motions to Dismiss, it will do so pursuant to this same lenient standard of review. "Obviously, if a plaintiff cannot establish standing to sue, relief from this [C]ourt is not possible, and dismissal under 12(b)(1) is the appropriate disposition." *American Fed. of Gov. Employees, Local 2119 v. Cohen,* 171 F.3d 460, 465 (7th Cir.1999).

█ When considering a Rule 12(b)(1) motion to dismiss, a court assumes that all *factual* allegations in the complaint are

---

5. Rule 12(h)(3) provides that, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the

subject matter, the court shall dismiss the action."

true. *See Energy Recovery, Inc. v. Hauge,* 133 F.Supp.2d 814, 816–17 (E.D.Va.2000) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982)). In contrast, the Court is not obligated to assume that a plaintiff's *legal conclusions or arguments* are also true. *See Madison–Hughes v. Shalala,* 80 F.3d 1121, 1124–25 (6th Cir.1996) (dismissing a complaint under Rule 12(b)(1) because jurisdiction depended upon an alleged legal requirement which did not exist). *See also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (stating that, in the context of a 12(b)(6) motion to dismiss, "we are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) ("the moving party should prevail only if material jurisdictional *facts* are not in dispute") (emphasis added); *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir. 1991) (noting that, when considering a 12(b)(6) motion, a court does not accord a plaintiff's legal conclusions the presumption of truth); *Teagardener v. Republic–Franklin Incorporated Pension Plan,* 909 F.2d 947, 950 (6th Cir.1990) (refusing, when considering a 12(b)(6) motion, to accept as true plaintiffs' allegations that they were pension plan "participants" or "beneficiaries," as those terms are defined in ERISA).[6] For his claims to survive a 12(b)(1) motion, the plaintiff bears the burden of proving subject matter jurisdiction, *see Energy Recovery,* 133 F.Supp.2d at 816–17 (citing *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768), but the Court may also consider evidence outside the pleadings to determine whether jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768.

Finally, " 'the moving party should prevail only if the material jurisdictional *facts* are not in dispute, and the moving party is entitled to prevail as a matter of law.' " *Id.* (emphasis added).

## 2. ANALYSIS

### a. Case or Controversy

■■■ The U.S. Constitution only permits courts to adjudicate "cases or controversies." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). *See also* U.S. Const. art. III, § 2. A plaintiff possesses Article III standing if (1) he has suffered an "injury in fact," (2) that is fairly traceable to the challenged action of the defendant, and (3) the injury likely will be redressed by a favorable decision of the court. *See Piney Run Preservation Assoc. v. County Comm'ners of Carroll County, Md.,* 268 F.3d 255, 262 (4th Cir. 2001) (quoting and citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Plaintiffs who wish to establish standing bear the burden of satisfying *each* of these three elements. *See United States v. Jones,* 136 F.3d 342, 348 (4th Cir.1998) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Courts inquire into a plaintiff's standing to ensure that the parties have enough of a stake in the case to litigate the issues properly. *See Pye v. United States,* 269 F.3d 459, 466 (4th Cir.2001). Were it otherwise the case, legal questions presented to the a court would be discussed "in the rarefied atmosphere of a debating society" rather than "in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Piney Run,* 268 F.3d at 262 (citing *Valley Forge*

---

**6.** Motions to dismiss pursuant to Rule 12(b)(6) are analogous to those pursuant to 12(b)(1) to the extent that courts accept a plaintiff's allegations of material facts as true

and construe the complaint in the plaintiff's favor. *See U.S. v. Rodriguez–Aguirre,* 264 F.3d 1195, 1203 (10th Cir.2001).

*Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

█ In the same vein, federal courts may not render advisory opinions; its judgments must "resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirik*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)).

### *Actual or Imminent Injury*

█ To satisfy the first element of standing, a plaintiff must allege that he has suffered the invasion of a "legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. *See also Pye*, 269 F.3d at 468. The injury in fact must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560–61, n. 1, 112 S.Ct. 2130. *See also Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Finally, the alleged injury must also be "legally and judicially cognizable." *Id.*

█ In the context of some First Amendment challenges, the Supreme Court has relaxed this standing requirement in cases where allegedly unconstitutional statutes might cast a "chilling" effect upon Plaintiffs' protected activity. *See Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Nevertheless, in each of these contexts, "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, *and* the complainant was either presently or prospectively subject to the regulations, proscriptions, or compul-

sions that he was challenging." *Id.* (emphasis added).

█ Furthermore, "these decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of … legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action ….'" *Id.* (quoting *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937).).

### i. Attorney General

█ Plaintiffs have alleged no injury in fact, either actual or imminent, attributable to the Attorney General. Nevertheless, the Plaintiffs argue that their allegations should satisfy the liberal pleading requirements of Rule 8(a) and Rule 12(b)(1), because a court should "assume[ ] that all factual allegations of the complaint are true." However, in adopting this analytical standard, this Court may not conflate the distinction between what is fact and what is law.

To lay a foundation upon which their charges against the Attorney General may stand, the Plaintiffs first quote various sections of the Virginia Code. Although these statutes are themselves irrelevant to their claims, the Plaintiffs assert that, as a result of these statutes, the Attorney General has the authority to enforce the laws they challenge, namely §§ 14(20), 57–12, and 57–15. While Plaintiffs may state "facts" when they correctly quote the text of these statutes, they then invent a theoretical *legal* mechanism to arrive at the following conclusion: if the Attorney General may enforce the quoted statutes, he must be able to enforce §§ 14(20), 57–12, and 57–15. In doing so, Plaintiffs state not factual allegations but legal conclusions that are not found in Virginia law, and the truth of which the Court is not obligated to

accept—even under the lenient standards of 12(b)(1).

For example, Plaintiffs charge, *inter alia*, that the Attorney General maintains, pursuant to Va.Code Ann. § 13.1–915, "the power to request the [State Corporation] Commission to involuntarily terminate a nonstock corporation;" and pursuant to § 13.1–931, "the power to revoke a certificate of authority of a foreign corporation;" and pursuant to § 13.1–826, the power to "accept[ ] written notice from corporations regarding their taxable status." [7]

As a result of these statutes, the Plaintiffs argue, the Attorney General must be a proper party to this action. They contend, *inter alia*, that the Attorney General maintains "a direct connection to the incorporation laws of Virginia," is "obligated to enforce applicable provisions of state law," and has "the authority to institute a suit against Plaintiffs if Plaintiffs violate § 57–12." The Court shall examine each one of these assertions in turn:

- "A direct connection to the incorporation laws of Virginia." While this statement may be true in some contexts, Plaintiffs have not cited to any action or any law which creates a "direct connection" between the challenged statutes and the Attorney General sufficient enough to make him a party to this case.
- "Obligated to enforce applicable provisions of state law." While this statement may be true in some contexts, Plaintiffs have not cited any legal authority or activity which states that his enforcement authority applies to § 14(20), 57–12, or 57–15.

- "The authority to institute a suit against Plaintiffs if Plaintiffs violate § 57–12." The Plaintiffs cite no legal authority to support this contention, nor have they presented evidence that the Attorney General is suing, has sued, or shall sue the Plaintiffs or anyone else under § 57–12.

In summary, the challenged provisions— §§ 14(20), 57–12 and 57–15—contain no language stating how they may be enforced at all, let alone what the Attorney General's particular enforcement role would be. In addition, the Plaintiffs have presented no evidence or arguments to indicate that the Attorney General has ever enforced or intends to enforce these provisions against Plaintiffs in the future or anyone else in the past. Furthermore, it is not the province of this Court to speculate as to what such an enforcement mechanism might consist. Those types of decisions are left to the Virginia General Assembly, and not to a federal court.

In response, Plaintiffs concede that no specific punishment is prescribed for violations of §§ 57–12 or 57–15. Nevertheless, they contend that Va.Code Ann. § 18.2–8 [8] provides the Attorney General with the authority to prosecute violations of these challenged provisions as misdemeanor criminal offenses. This argument is untenable. Indeed, were the challenged statutes criminal statutes, this position would succumb to the rule of lenity, a fundamental legal principle which provides that ambiguous criminal statutes be construed in favor of the accused. *Staples v. United*

---

**7.** Plaintiffs also charge that "[t]he Attorney General is automatically a party to any appeal from a decision of the [State Corporation] Commission to the Virginia Supreme Court, pursuant to Rule 5:21 of the Rules of the Virginia Supreme Court." While this allegation is a correct statement of the law, it is irrelevant to this case because Plaintiffs have

not appealed any adverse decision of the State Corporation Commission.

**8.** Va.Code Ann. § 18.2–8 provides that "[o]ffenses are either felonies or misdemeanors. Such offenses as are punishable by death or confinement in a state facility are felonies; all other offenses are misdemeanors."

*States,* 511 U.S. 600, 619, n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). *See also* Justice Antonin Scalia, *Common–Law Courts in a Civil Law System,* at 29, in A Matter of Interpretation: Federal Courts and the Law (A.Scalia, ed., 1997) ("The rule of lenity is almost as old as the common law itself. . . .").

However, §§ 57–12 and 57–15 are unambiguously non-criminal statutes.[9] Title 18.2 of the Virginia Code covers crimes. Title 57 covers Religious Matters, Charitable Matters, and Cemeteries. It is safe to say that had the General Assembly wished to empower the Attorney General to seek "confinement in jail for not more than twelve months," *see* § 18.2–11, for church trustees or pastors who would violate §§ 57–12 or 57–15, the General Assembly would have thus provided. *See Cook v. Commonwealth,* 20 Va.App. 510, 513, 458 S.E.2d 317, 319 (1995) (" '[D]efining crimes and fixing penalties are legislative, not judicial, functions.' " (quoting *United States v. Evans,* 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948))). This federal Court shall not invent a state crime proscribing conduct that the Virginia General Assembly has chosen not to proscribe.

Most importantly, even if the Attorney General were empowered to enforce these provisions, Plaintiffs, by their own admission, have not even violated them prior to the repeal of City Code § 18–46. For example, while other entities affiliated with Thomas Road have begun construction on the new sixty acre site, the Trustees themselves have not attempted to take title to these sixty acres. The Trustees have not attempted to incorporate, nor have appealed any denial of incorporation to the Attorney General. In addition, the Trustees

have stated that they do not hold in excess of ten million dollars in money, securities, or other personal property.

In fact, since the City has repealed its ordinance, the Trustees now appear to violate § 57–12. According to the City Assessor, Thomas Road Baptist Church now encompasses 28.88 acres—13.88 acres more than that allowed by § 57–12. Nevertheless, the Attorney General has not prosecuted or enjoined either the Trustees or Rev. Falwell in any manner. Indeed, the Attorney General asserts that it has no authority to do so. As a result, maintaining this action against the Attorney General would frustrate a fundamental purpose of Article III's case or controversy requirement. A Defendant should not have endure the considerable expense of litigating a case in which he has no stake.

Finally, Plaintiffs cite § 55–29 for the following proposition: if the Attorney General may intervene to enforce compliance with certain testamentary restrictions, he must be a proper party in this case. § 55–29 provides that:

> *When any such gift, grant or will is recorded and no trustee has been appointed, or the trustee dies or refuses to act,* the circuit court of the county or the circuit or corporation court of the city in which the trust subject or any part thereof is, in the case of a gift or grant, or in which the will is recorded, *may, on motion* of the attorney for the Commonwealth in such court (whose duty it shall be to make such motion), appoint one or more trustees to carry the same into execution.

Va.Code Ann. § 55–29 (emphasis added).

In this case, while Defendants may expect to receive property from a trust at

9. This case differs from *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 710 (4th Cir.1999), in which a plaintiff who faced "a credible threat of prosecution under a criminal statute" had standing to mount "a pre-

enforcement challenge to that statute." In this case, the Plaintiffs face no credible threat of prosecution, because the challenged provisions, Va.Code Ann. 57–12, 57–15, and Article IV, § 14(20), are not criminal.

some future time, they have neither received any such property, nor have they attempted to receive such property. In fact, no trust established to donate property to Thomas Road Baptist Church exists in this record. Furthermore, it is even more speculative to assume that were there such a trust, that either (1) no trustee would be appointed, or (2) a trustee would die, or (3) a trustee would refuse to act. It would only be at that time that the Attorney General or Commonwealth's Attorney, *see infra*, would decide whether or not to intervene on behalf of such a trust. Nothing in this statute or in any other state law empowers the Attorney General to intervene and seek to enjoin a trustee from governing a trust that violates § 57–12.[10]

To allow the Attorney General to remain in this suit would require this Court to link him to this case via untenable leaps of logic, the likes of which Article III commands this Court to avoid. In this case, the Plaintiffs have alleged only that the Attorney General may, at some future time, via some hypothetical mechanism, enforce §§ 14(20), 57–12, and 57–15 against them. Because the Plaintiffs have not demonstrated an injury in fact, either actual or imminent, fairly traceable to the Attorney General, they lack standing against him under Article III. *See Lujan,* 504 U.S. at 565, n. 2, 112 S.Ct. 2130 ("plaintiff alleges only an injury at some indefinite future time.") As a result, the Attorney General must be dismissed from this case without prejudice.

### ii. Commonwealth's Attorney

The Article III reasoning which demands the dismissal of the Attorney General likewise applies to the Commonwealth's Attorney, Mr. Petty. The Plaintiffs allege that "[t]rustees have reason to fear that the Commonwealth Attorney may charge them with a misdemeanor if they violate § 57–12." As Commonwealth's Attorney, Mr. Petty primarily prosecutes crimes; he "may in his discretion, prosecute Class 1, 2, and 3 misdemeanors, or any other violation, the conviction of which carries a penalty of confinement in jail" and "shall enforce all forfeitures." Va. Code Ann. § 15.2–1627. As above, these provisions are irrelevant to this case. Just as there is no provision in the Virginia Code which empowers the Attorney General to prosecute violations of the challenged provisions as criminal offenses, neither is there a provision empowering the Commonwealth's Attorney to do likewise.

Similarly, the Plaintiffs also allege that because a Commonwealth's Attorney may move a Virginia circuit court to appoint trustees for charitable gifts, trusts or wills which lack them, *see* § 55–29, he also "clearly has the authority to intervene to prohibit [a] transfer if that transfer violates" §§ 57–12 or 57–15. On the contrary, what is most clear to this Court is the plain language of § 55–29, which enables a Commonwealth's Attorney to intervene only in limited instances. As above, because the General Assembly has granted the Commonwealth's Attorney the authority to ensure that no trust should fail for lack of a trustee, it does not follow that the

---

**10.** Plaintiffs cite *In re Petition for the Appointment of Church Trustees,* 1990 WL 751176, *2 (Va.Cir.Ct.1990) and *Sweet Briar Institute v. Button,* 280 F.Supp. 312 (W.D.Va.1967) in support of their argument that the Attorney General and the Commonwealth's Attorney (*see infra*) are proper parties to this case. Since the latter relies upon § 55–29 and the

former upon authority similar to that of § 55–29, they are inapplicable to this case for the same reasons as is § 55–29. Additionally, both *In Re Petition* and *Sweet Briar Institute* involved actual trusts that were in controversy before their respective courts. In this case, no such trust exists.

Commonwealth's Attorney may intervene to prohibit a transfer which would render a grantee in violation of §§ 57–12 or 57–15. *Cf. Tauber v. Commonwealth,* 255 Va. 445, 499 S.E.2d 839 (1998) (permitting a Commonwealth's Attorney to intervene in a trust pursuant to § 55–29). Similarly, because other provisions in the Virginia Code *expressly* authorize the Commonwealth's Attorney to intervene in other contexts, it does not follow that §§ 55–29 *implicitly* authorizes a similar intervention in this case.[11] In fact, logic dictates that absent express authority from the General Assembly, the Commonwealth's Attorney would be *prohibited* from intervening.

Plaintiffs have suffered no injury, either actual or imminent, that is fairly traceable to the Commonwealth's Attorney. In his affidavit, the Commonwealth's Attorney stated that he has no authority to enforce §§ 57–12 and 57–15. Furthermore, the General Assembly has not empowered the Commonwealth's Attorney to enforce these provisions. Finally, even if the Commonwealth's Attorney were empowered to enforce these provisions, he has not yet done so, and has further stated that he will not do so.[12] Plaintiffs' arguments to the contrary are based not upon factual allegations, but legal conclusions, the truth of which this Court is not obligated to accept under 12(b)(1).

Because the Plaintiffs have not demonstrated an injury in fact, either actual or imminent, fairly traceable to the Commonwealth's Attorney, they lack standing under Article III. As a result, the Common-wealth's Attorney must be dismissed from this case without prejudice.

### iii. Judge Perrow

The Plaintiffs file suit against Judge Perrow pursuant to provisions of § 57–15, which provide that church trustees "in whom is vested the legal title to such land ... may file their petition in the circuit court of the ... city wherein the land ... lies ... asking leave to sell, encumber, extend encumbrances, improve, make a gift of, or exchange the land, or a part thereof or to settle boundaries between adjoining property by agreement." If the circuit court determines that "it is the wish of the congregation [or] church" to treat the land as such, then the court shall issue an order in accordance with the wishes of the congregation or church. *See* § 57–15.

The Plaintiffs argue that because a circuit judge must hear the Trustees' petition, and issue an order regarding that petition in accordance with § 57–15, he is therefore an "enforcer" of § 57–15. This line of reasoning misconstrues the judicial process. Were the trustees of a church petitioning the circuit court for leave to "sell, encumber, extend encumbrances, improve, make a gift of, or exchange the land, or a part thereof, or to settle boundaries between adjoining property by agreement,"—which in this case they are not—then the proper parties before the circuit court would be the Trustees and their congregation. In such a case, the circuit court judge would preside over the dispute, and then issue an order based on

---

**11.** § 6.1–2.27 authorizes the Commonwealth's Attorney to enjoin people form violating the Consumer Real Estate Settlement Protection Act. § 10.1–1141 authorizes the Commonwealth's to institute proceedings to collect financial costs incurred by the State Forrester for fires. § 58.1–339.10 authorizes the Commonwealth's Attorney to collect funds when a taxpayer has received more tax credit than due in the context of riparian forest buffer protection. Since each of these provisions contain specific language empowering the Commonwealth's Attorney to intervene in non-criminal matters, they do not apply to questions under §§ 57–12 and 57–15, which contain no such provisions.

**12.** See discussion of facial challenges, *infra.*

the facts and applicable law. This job does not turn the judge into an "enforcer" of the law who has independent authority to prosecute a civil or criminal claim against the Plaintiffs. He is not empowered to initiate proceedings regarding cases not before him, nor have Plaintiffs shown that he has ever done so. Nor is he made an eligible party to a particular action resulting from a case in his court simply because he presides over it. Should the Trustees of Thomas Road Baptist Church suffer an adverse action within a circuit court of the Commonwealth, then their proper Defendant—outside the context of a writ of mandamus—is their opposing party, not the circuit court.

With respect to § 57–12, Plaintiffs state their case in a similar manner.[13] The Trustees argue that because § 57–11 gives the circuit court jurisdiction over property suits against or by church trustees, and because § 57–12 limits the amount of property church trustees may own, then "the circuit court is the enforcer of the property limitation" under § 57–12. Once again, were such a lawsuit between one party and the trustees of a church to exist in this case—which it does not—a circuit court judge would simply preside over the dispute, and then issue a verdict or decree based on the facts and applicable law. This job does not turn the judge into either an "enforcer" of the law or a proper party the Plaintiffs could sue after suffering an adverse decision. Under this logic, any Plaintiff who lost any case in any circuit court of the Commonwealth or was burdened by any particular law in the Virginia code, could sue the circuit judge in the plaintiff's jurisdiction.

Because the Plaintiffs neither have shown that Judge Perrow has injured

them nor can show that he will injure them, there is no case or controversy between the Plaintiffs and Judge Perrow. As a result, he must be dismissed without prejudice.

### iv. Clerk of the Court

 In their complaint, Plaintiffs state two allegations against Defendant Palmer, in his official capacity as Clerk of the Circuit Court for the 24th Judicial Circuit. First, they assert that Mr. Palmer "will not record a deed or land transaction regarding a church" except pursuant to an order issued by a judge of that court. Second, Plaintiffs allege that the clerk will not record a deed or land transaction that violates §§ 57–12 and 57–15. Both allegations are not factual allegations, but postulated duties, the legal basis for which is found not in law, but only in Plaintiffs' Memoranda.

While Defendant Palmer has moved for summary judgment, and Plaintiffs have opposed Defendant Palmer's Motion, this Court first addresses whether the Plaintiffs have presented a case or controversy with respect to the clerk.

Virginia law provides that the clerk of the circuit court shall record writings "upon payment of fees for the same and the tax thereon, if any, shall, when admitted to record, be recorded . . . ." Va.Code. Ann. § 17.1–223. "However, the clerk may refuse to accept any writing for . . . recordation unless . . . the Code section under which any exemption for recordation tax is claimed is clearly stated on the face of the writing." *Id.* In other words, the clerk of the court may refuse to record deeds or documents which are not accompanied by the proper taxes and fees, or which fail to

---

**13.** Plaintiffs also state that, "Defendant Perrow argued in his Memorandum that judicial immunity bars the Plaintiffs' action." Because Judge Perrow nowhere in his Memo- randum asserts judicial immunity as a defense, the Court shall decline comment on Plaintiffs' contentions that judicial immunity does not bar suit against Judge Perrow.

state the legal basis for their tax-exempt status.

To determine the proper taxes, the clerk turns to, in part, Va.Code Ann. § 58.1–801, which provides that, "[o]n every deed admitted to record, except a deed exempt from taxation by law, there is hereby levied a state recordation tax. The rate of the tax shall be fifteen cents on every $100 or fraction thereof of the consideration of the deed or the actual value of the deed, whichever is greater."

Having determined the rate of taxation, the Court next determines whether any land may be tax exempt. To do so, the clerk turns to, in part, Va.Code Ann. § 58.1–811, which states that, "[t]he taxes imposed by § 58.1–801 shall not apply to any deed conveying real estate ... to the trustee or trustees of any church or religious body where such real estate is intended to be used exclusively for religious purposes ...."

At this point, the clerk must determine whether the real property in question would be intended to be used exclusively for religious purposes. If the property were to be so used, then the Clerk would impose no recordation tax. See § 58.1–811. If the property would be used in another manner not exempt from § 58.1–811, then the Clerk would impose a recordation tax on the property not used exclusively for religious purposes. See § 58.1–801.

In the case at hand, it is at this juncture where the concrete road of statutory interpretation turns into a fluid mire of hypothetical postulation. Contrary to the Plaintiffs' assertions, the law provides no answer to the question of what the clerk would do were the Trustees to present the clerk with a deed asserting title to more acres than would be allowable under § 57–12.

Perhaps the clerk would conclude that the land—greater than either 15 acres or 50 acres—would be used entirely for religious purposes; he might therefore assess no recordation tax and record the deed. Perhaps the clerk would conclude that § 57–12 prohibits the Trustees from owning more than 15 or 50 acres of land; he might therefore assess a recordation tax on the land over 15 or 50 acres, and then record the deed. Perhaps the clerk would refuse to record the deed, but only with respect to the amount of land under 15 or 50 acres. Perhaps the clerk would seek counsel from another State officer, such as the City Assessor, Commissioner of Revenue, or another auditing authority, to determine whether or not to record the deed or to assess the tax. Perhaps the clerk would even refuse to record the deed altogether, even though he has sworn under oath that he would not do so.

What is clear is that the Plaintiffs have suffered no actual injury from the clerk at this time. Neither have they submitted a deed for recordation, nor has the clerk refused to record any deed submitted by the Plaintiffs. Furthermore, the Plaintiffs would suffer an imminent injury from the clerk only if this Court assumes that Plaintiffs' proposed legal theories[14] regarding the clerk's duties are correct. Finally, if the Plaintiffs are challenging the amount of taxes levied upon land they own, then an appropriate course would be to challenge

---

14. The Trustees argue that, "The question of 'exclusive' use for religious purposes demands that the Clerk consider the limitation of Sections 57–12 and 57–15. It is pure nonsense to believe that a church can use property 'exclusively' for religious purposes and thus be exempt from recordation taxes when the church trustees may not claim title to the property because of the statutory limitations. Why would a clerk take the risk of under assessing the recordation tax when it is obvious pursuant to state and local law that the church has no legal claim to the property it seeks to have exempted from the tax?"

the appropriate statutes in Title 58.1, not in §§ 57–12, and 57–15, which are the only statutes challenged in the Complaint. In the meantime, the Court will not maintain a Defendant as a party to a suit, the basis of which is grounded in only theoretical harm.

In response, the Trustees and Rev. Falwell assert that the clerk would subject himself to considerable personal liability should he fail to assess the correct amount of recordation tax. *See* 1984–84 Va. Op. Atty. Gen 380, 1984 WL 184295, at *1 (citing *Lucas, Sergeant & C. v. Claffin & Co.,* 76 Va. 269, 281 (1882)). The Plaintiffs ask, "Why would a clerk take the risk of under assessing the recordation tax when it is obvious pursuant to state and local law that the church has no legal claim to the property it seeks to have exempted from the tax?" The clerk would only be exposed to this liability should he record the deed and assess a recordation tax below what is proper; but in this case, the Plaintiffs have not even offered the clerk a deed to record. Since they have not done so, as noted above, this Court could do nothing more than speculate as to what the clerk would do were he presented with a deed in violation of §§ 57–12 or 57–15. As Justice Scalia has written, "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan,* 504 U.S. at 564, 112 S.Ct. 2130.

Likewise, the Plaintiffs also contend "the city and county treasurer will not permit a church to be tax exempt if the property is in excess of that which is permitted by law." This statement, though possibly true, is also speculative and irrelevant to this case. In their Complaint, Plaintiffs challenge not the tax statutes of Title 58.1, nor any adverse action by the city treasurer, but the clerk's speculated actions with respect to §§ 57–12 or 57–15.

In this case, the Plaintiffs have suffered no actual injury from the clerk. Neither have the Plaintiffs offered any documents to be recorded, nor has the clerk refused to record any documents offered by the Plaintiffs. Plaintiffs' predictions of imminent injury are not based upon facts, but on legal assertions lacking foundation. Because Plaintiffs' have demonstrated no grounds for standing against the clerk, he must be dismissed from this case without prejudice. Accordingly, his Motion for Summary Judgment shall be dismissed as moot.

b. Facial Challenges against Allegedly Unconstitutional Statutes

While plaintiffs do not need to be arrested or prosecuted to challenge an allegedly unconstitutional statute, *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), "[t]he Supreme Court has made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution under the statute to present a case or controversy." *Doe v. Duling,* 782 F.2d 1202, 1206–07 (4th Cir.1986). This threat must be both "real and immediate." *Id.* at 1207. In this case, however, Plaintiffs face threats of neither criminal prosecution, nor civil liability. Furthermore, none of the First Amendment facial challenges in which the plaintiffs were granted standing concerned statutes at all analogous to §§ 57–12 and 57–15.

For instance, in *Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 950–51, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the plaintiffs challenged, on First Amendment grounds, a Maryland statute which prohibited charitable organizations from paying or agreeing to pay more than 25% of the gross amount raised in expenses. The law charged the

Secretary of State with administering and enforcing the statute, and statutes in the same scheme provided that professional fundraising companies would be subject to criminal prosecution for wilfully violating the statutory requirements. *Id.* at 951, 104 S.Ct. 2839. The Secretary of State warned the plaintiff that he would be prosecuted if he charged more than 25% of his receipts as expenses. *Id.* Additionally, Munson also stood to lose a fundraising contract. *Id.* As a result, the Court concluded that Munson "suffered both threatened and actual injury as a result of the statute," and therefore had standing to challenge it. *Id.* at 954–55, 104 S.Ct. 2839.

In contrast, the Fourth Circuit denied standing to unmarried adults who sued various state officers to challenge the constitutionality of Virginia's criminal fornication and cohabitation statutes, but presented no case or controversy. *See Doe,* 782 F.2d 1202. In *Doe,* the plaintiffs alleged that they feared prosecution for engaging in the prohibited behavior, even though, the Fourth Circuit concluded, that "recorded cases reveal[ed] that the application of the statutes to such activity is, at most, a matter of historical curiosity." *Id.* at 1206. Because the Does faced "only the most theoretical threat of prosecution," the appellate panel denied them standing. *Id.*

The facts in this case bear more resemblance to those of *Doe* than *Munson.* First, the Trustees suffer no criminal exposure from violating §§ 57–12 or 57–15. Unlike either in *Doe* or *Munson,* these statutes contain no enforcement provisions. Furthermore, neither the Attorney General, the Commonwealth's Attorney, nor Judge Perrow have the authority to prosecute the plaintiffs.[15] In addition, it would be speculative to assume that the clerk would also enforce these acts against the Trustees.

Second, these Defendants have stated or argued that they have no intention of prosecuting the Plaintiffs, either criminally or civilly. Third, the Plaintiffs have not alleged any injury—actual or imminent—as a result of the statute. The Trustees themselves have not attempted to take title to the additional sixty acres, nor have they attempted to record a deed in which they have been granted sixty acres. In addition, the Trustees have not attempted to hold in excess of ten million dollars in money, securities, or other personal property. In fact, the Trustees, who hold 28.88 acres of land, now appear to be in violation of § 57–12 but have suffered no injury at the hands of any party currently before the Court.

In *Munson,* the plaintiff suffered actual and imminent injury at the hands of a statute, the enforcement scheme of which was delegated to a specific individual—one who also threatened the plaintiff with criminal prosecution. *See also Steffel,* 415 U.S. at 459, 94 S.Ct. 1209 (stating that an "actual controversy" exists when the state threatened to prosecute anti-war handbillers pursuant to a misdemeanor trespassing statute[16]); *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 710 (4th Cir.1999) (granting standing to a political action committee which wished to distrib-

---

15. Given that the statutes in this case are not criminal statutes, the facts leading to the *Doe* rationale present an even more compelling argument to deny Plaintiffs standing in this case than do the facts in *Doe* itself.

16. At issue in *Steffel* was the following statute, Ga.Code Ann. § 26–1503 (1972) that was threatened to be applied in an unconstitution-al manner: "A person commits criminal trespass when he knowingly and without authority ... remains upon the land or premises of another person ... after receiving notice from the owner or rightful occupant to depart.... A person convicted of criminal trespass shall be punished as for a misdemeanor." *Steffel,* 415 U.S. at 455, n. 1, 94 S.Ct. 1209.

ute voter guides, but faced the possibility of criminal prosecution [17] if it did not register and file certain reports with the state); *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir.1996) (stating that a political action committee had standing when it faced prosecution [18] for making certain types of expenditures at a future time). "Even in the area of First Amendment disputes, the Supreme Court has generally required a credible threat of prosecution before a federal court may review a state statute." *Doe*, 782 F.2d at 1206. *Cf. Brown v. Gilmore*, 258 F.3d 265 (4th Cir.2001) (according standing to plaintiffs who challenged Virginia "minute of silence" statute, where its text provided that, "The Office of the Attorney General shall intervene and shall provide legal defense of this law.")

While the Court sympathizes with the Plaintiffs' desire not to violate the law, the Court also notes that the Plaintiffs have not yet demonstrated any actual injury attributable to doing so—at least with respect to any Defendant in this case. Furthermore, the imminent injury of which Plaintiffs fear lacks support in either law or fact with respect to these defendants; on their faces, the challenged statutes lack both a penalty and an enforcement mechanism. Until the Plaintiffs take some affirmative step which would present them with an imminent or actual injury resulting from violating §§ 57–12 and 57–15, they lack a legally cognizable claim.

The Court now turns to the Defendants' defense of sovereign immunity.

**c. Sovereign Immunity**

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In subsequent years, the Supreme Court has extended this doctrine of sovereign immunity beyond the text of the Eleventh Amendment to prevent a State from being sued by one of its own citizens without its consent. *See Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir.2001) (citing *Alden v. Maine*, 527 U.S. 706, 727–28, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). Alternatively, suits by citizens against their own State may proceed under an exception articulated in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which "permits certain suits in federal court against state officers." *Waste Management*, 252 F.3d at 329. *Young* provides that federal courts may enjoin a state officer from enforcing an unconstitutional statute, even "if the threat is not yet imminent." *Id.* at 329–30. These officers include those who are "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act." *Young*, 209 U.S. at 156–57, 28 S.Ct. 441.

Nevertheless, the *Young* exception is not without boundaries. Plaintiffs must demonstrate a "special relation" be-

---

**17.** At issue in *Bartlett* were N.C. Gen.Stat. § 163.278 *et seq.*, which subjected violators of state campaign finance laws to criminal penalties for not complying with its provisions. 168 F.3d at 709.

**18.** The relevant statute in *Gardner* stated that, "No political committee shall make independent expenditures in excess of $1,000 for any

or against any candidate running for a particular office in a state primary election, and a like amount in a state general election, in support of or to oppose any candidate." N.H.Rev.Stat. Ann. 664:5, V. Violation of this or related provisions resulted in a criminal offense. *Id.* at 664:21, V. *See Gardner*, 99 F.3d at 10.

tween the state officer sued and the allegedly unconstitutional statute to escape the bar of the Eleventh Amendment. *Young,* 209 U.S. at 157, 28 S.Ct. 441 (citing *Fitts v. McGhee,* 172 U.S. 516, 530, 19 S.Ct. 269, 43 L.Ed. 535 (1899)).

Were it otherwise, then

[T]he constitutionality of every act passed by the legislature could be tested by a suit against the . . . attorney general . . . . That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by the individuals, but it [would be] a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Young,* 209 U.S. at 157, 28 S.Ct. 441 (quoting *Fitts,* 172 U.S. at 516, 19 S.Ct. 269).

Because claims that are barred by sovereign immunity deprive federal courts of their subject matter jurisdiction, defendants may move to dismiss such claims against them via Rule 12(b)(1). 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed.1987). *See also Taylor v. Commonwealth,* 170 F.R.D. 10, 12 (E.D.Va.1996) (citing *Warnock v. Pecos County Texas,* 88 F.3d 341, 343 (5th Cir.1996)).

In this case, Defendants Kilgore, Perrow, and Petty move to dismiss the claims against them pursuant to Rule 12(b)(1). Because the Plaintiffs have failed to demonstrate that any relationship exists between the allegedly unconstitutional laws and Defendants Kilgore, Perrow, and Petty, their claims not only lack standing, but are likewise barred by sovereign immunity.

### i. Attorney General

■ With respect to Defendant Kilgore, the Plaintiffs contend that they have alleged "a sufficient connection" between the Attorney General and the laws which Plaintiffs challenge. However, the Plaintiffs' claims fail in the context of sovereign immunity for much the same reasons they fail under the "case" or "controversy" requirements, *supra.* First, the Plaintiffs' claims against the Attorney General are not based upon factual allegations, but legal speculation. The Plaintiffs have not cited to any language in §§ 57–12, 57–15, or 14(20) which empowers the Attorney General to enforce them.

Nevertheless, in fashioning the "special relationship" exception to the Eleventh Amendment, the *Young* Court stated that:

It has not, however, been held that it was necessary that such [enforcement] duty should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed . . . but that may possibly make the duty more clear; if *it otherwise [may] exist,* it is equally efficacious. The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact and whether it arises out of the general law, or is specially created by the act itself, is not material *so long as it exists.*

*Young,* 209 U.S. at 157, 28 S.Ct. 441 (emphasis added). Therefore, while *Young* does not require the Virginia General Assembly to have granted express enforcement authority to the Attorney General in the statute, this federal Court will not invent such a duty if one does not exist elsewhere in the law. Thus far, Plaintiffs have not shown that such a duty exists. As noted above, Plaintiffs' allegations that the Attorney General maintains "a direct connection to the incorporation laws of Virginia," "the authority to institute a suit against Plaintiffs if Plaintiffs violate § 57–12," and is "obligated to enforce applicable provisions of state law," are not factual allegations, but legal conclusions that lack

foundation, and the alleged truth of which the Court is not obligated to accept under 12(b)(1).

Furthermore, in arguing against a 12(b)(1) motion to dismiss, plaintiffs bear the burden of demonstrating that this Court has subject matter jurisdiction. *See Energy Recovery*, 133 F.Supp.2d at 816–17. Plaintiffs' allegations that the Attorney General has a general obligation to enforce the laws are not sufficient to make him a proper party to litigation challenging §§ 14(20), 57–12, or 57–15. In addition, Plaintiffs' unsupported speculation that the Attorney General has "the authority to institute a suit against Plaintiffs if Plaintiffs violate § 57–12" is false. As a result, in their Complaint and subsequent Memoranda, the Plaintiffs in this case have demonstrated no legal or factual basis to show that the Attorney General is a proper party.

This Court's conclusion comports with Fourth Circuit precedent, most recently articulated in *Waste Management*. 252 F.3d 316. In that case, landfill operators and transporters of municipal solid waste challenged five Virginia statutes as unconstitutional and sued several Defendants, including the Governor of Virginia. *Id.* Invoking *Young*, the Fourth Circuit dismissed the Governor as a party to the suit, because "although [he] is under a general duty to enforce the laws of Virginia by virtue of his position, he lacks a specific duty to enforce the challenged statutes." *Id.* at 331.

Similarly, in *Lytle v. Griffith*, 240 F.3d 404, 411 (4th Cir.2001), Plaintiffs won a district court injunction prohibiting the Governor from enforcing a Virginia anti-loitering statute deemed unconstitutional. The appellate panel reversed and remanded solely to allow the district judge the opportunity to consider the sovereign immunity issue first presented by the parties only at the appellate stage. *Id.* In doing so, the Court determined the inquiry to consist of two questions:

(1) What is the Governor's connection, if any, to the enforcement of the challenged anti-loitering statute? and (2) If there is a connection, is it sufficient to implicate the exception to sovereign immunity found in *Ex parte Young?*

*Id.* In dissent, the Chief Judge deemed the case ripe for disposition and answered these two questions in the negative: the Governor did not have a sufficient connection to the statute to trigger the *Young* exception. *Id.* at 411 (Wilkinson, C.J., dissenting). Indeed, the parties presented no evidence that the Governor enforced or intended to enforce the statute. *Id.* Moreover, the text of the statute did not even mention the Governor; it delegated its enforcement to local police officers. *Id.* at 413.[19]

This Court's sovereign immunity analysis mirrors its analysis of standing, *supra.* Unlike in *Lytle* or *Mobil Oil*, the challenged provisions in this case do not state how they should be enforced at all, let alone what the Attorney General's [20] en-

---

19. Conversely, in a case where a Virginia statute granted express authority to the Attorney General to "investigate and bring an action in the name of the Commonwealth to enjoin any violation" of the offending law, and where the Attorney General conceded that she had this authority, the Fourth Circuit held that the Attorney General was a proper party. *Mobil Oil Corp. v. Attorney General*, 940 F.2d 73 (4th Cir.1991).

20. Governors and Attorneys General should be treated equally under the *Young* exception to the Eleventh Amendment:

If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against *the governor and the attorney general*. . . .

forcement role would be. In addition, the Plaintiffs have presented no evidence or arguments to indicate that the Attorney General has ever enforced or intends to enforce these provisions either against Plaintiffs in the future or anyone else in the past. *See* Section a., *supra.* Until the Plaintiffs file suit against a Defendant who has sufficient connection to the challenged provisions to enforce them, and demonstrates that he intends to enforce them against the Plaintiffs, the case against the Attorney General will be barred by sovereign immunity.

### b. Commonwealth's Attorney and Judge Perrow

▮▮▮ Likewise, *Young* demands that the Commonwealth's Attorney and Judge Perrow must also be dismissed from this case.

As stated *supra,* just as there is no provision in the Virginia Code which empowers the Attorney General to prosecute violations of §§ 57–12 and 57–15, neither is there a provision empowering the Commonwealth's Attorney to do likewise.

The special relation required by *Young* between the laws challenged and the Commonwealth's Attorney does not exist. Plaintiffs have shown no connection, in law or in fact, between the Commonwealth's Attorney and the laws challenged, much less one that is sufficient enough to invoke the *Young* exception to sovereign immunity. Mr. Petty is not "clothed with some duty" to enforce the challenged laws; he does not "threaten" nor is he about to "commence proceedings" against the Plaintiffs. *See Young*, 209 U.S. at 155–56, 28 S.Ct. 441. Nothing in Virginia law gives the Commonwealth's Attorney the authority to prosecute violations of §§ 57–12 and 57–15, and he has even further stated that he will not bring such an action.

209 U.S. at 157, 28 S.Ct. 441 (emphasis add-

Similarly, Judge Perrow is also not "clothed with some duty" to enforce §§ 57–12 and 57–15 against the Plaintiffs. As stated above, Judge Perrow is not clothed with any ability or duty to enforce the challenged statutes against the Plaintiffs; his role is to adjudicate cases brought before him—whether they are between the Commonwealth and a criminal defendant, church trustees and their congregation, or the trustees and some other party. In the event that he should preside over such a case, Judge Perrow would still not bear a sufficient connection to the challenged statute within the meaning of *Young* or the Eleventh Amendment.

### B. MOOTNESS: DEFENDANT CITY OF LYNCHBURG

▮▮▮ A lawsuit shall be deemed moot if the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). While a defendant's voluntary discontinuance of challenged activities does not necessarily moot a lawsuit, *Jones*, 136 F.3d at 348 (citing *Iron Arrow Soc'y v. Heckler*, 464 U.S. 67, 71–72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983)), defendants are entitled to present evidence to demonstrate " 'that there is no reasonable likelihood that the wrong will be repeated.' " *Id.* (citations omitted). *See also Friends of the Earth*, 528 U.S. at 193, 120 S.Ct. 693. Local governments are also entitled to a presumption of good faith when they have voluntarily abandoned a practice challenged on constitutional grounds. *See Telco Communications v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989).

▮▮▮ The Plaintiffs in this case challenge Lynchburg City Ordinance § 18–46,

ed).

which was passed in 1985 to allow churches within the City to own up to fifty acres of land, or thirty-five acres more than that allowed under § 57–12 absent such an ordinance. On November 27, 2001, the City repealed § 18–46. The City has informed the Plaintiffs that it would neither re-enact this nor any other similar ordinance until the constitutional challenge to this statute had been resolved. Furthermore, the City stated it would not take any action against churches that have purchased more than fifteen acres of land. In this case, therefore, the City has not only promised not to enforce the challenged statute, it has *repealed* it entirely. *Cf. Telco Communications*, 885 F.2d at 1231 (mooting case against Virginia Office of Consumer Affairs when it had neither threatened to enforce a challenged statute nor asserted any right to enforce the statute.). Finally, neither the City nor the Plaintiffs have cited any mechanism which would empower the City to enforce §§ 57–12 in the absence of § 18–46.

Because the Plaintiffs assert that the City "has not disclaimed its old unconstitutional ways," and therefore could re-enact the offending ordinance at any time, they argue that the case against the City is not moot. To the contrary, nothing in the record shows that the City has any desire to return to its "old unconstitutional ways." In the report accompanying the repeal of § 18–46, the City Attorney stated, "In order to help the City try to get out of the lawsuit, the City Attorney's Office recommends that City Council repeal Section 18–46 of the City Code. *If the State statutes are found to be constitutional the City can reenact Section 18–46 at the appropriate time.*" (emphasis added).

The City Attorney's statement is not a smoking gun evidencing some hidden, nefarious purpose on the part of the City Council; what the City Attorney's statement represents is a good faith desire to comply with the Constitution. The City would propose re-enacting § 18–46 in the event that the relevant state statutes were found to be *constitutional.* Such a sentiment implies a desire to avoid its "old unconstitutional ways."

The Plaintiffs' contentions with respect to the City are both unreasonable and not in accordance with the good faith accorded to the decisions of local governments in these contexts. Accordingly, Plaintiffs' claims against the City must be dismissed without prejudice.

## V. CONCLUSION

"Federal courts, of course, stand ready to protect individual rights whenever such rights are tangibly threatened by the operation of suspect laws." *Doe*, 782 F.2d at 1202. Nevertheless, this task is not one courts should take lightly, especially when the state statutes at issue trace their histories to Thomas Jefferson's Statute of Virginia for Religious Freedom, an achievement by which he "wish[ed] to be most remembered." Charles B. Sanford, The Religious Life of Thomas Jefferson 172 (University Press of Virginia, 1995) (1984).[21]

Therefore, before determining whether the laws descending from one of Mr. Jefferson's most cherished accomplishments are constitutional, this Court must at least be assured that the parties litigating this

---

**21.** Jefferson's epitaph reads, "HERE WAS BURIED THOMAS JEFFERSON AUTHOR OF THE DECLARATION OF INDEPENDENCE, OF THE STATUTE OF VIRGINIA FOR RELIGIOUS FREEDOM AND FATHER OF THE UNIVERSITY OF VIRGINIA." Charles B. Sanford, The Religious Life of Thomas Jefferson 172 (University Press of Virginia, 1995) (1984).

question are properly before its jurisdiction.

An appropriate Order shall issue.

## ORDER

For the reasons articulated in the accompanying MEMORANDUM OPINION, Defendant Kilgore, Perrow, and Petty's Motions to Dismiss shall be, and hereby are, GRANTED. Plaintiffs' claims against Defendants Kilgore, Perrow, and Petty shall be considered DISMISSED WITHOUT PREJUDICE. Accordingly, Plaintiffs' Motions against any or all of these Defendants are DISMISSED AS MOOT.

This Court shall, and hereby does, DISMISS Defendant Palmer from this case *sua sponte*. Plaintiffs' claims against Defendant Palmer shall be considered DISMISSED WITHOUT PREJUDICE. Defendant Palmer's Motion for Summary Judgment shall be, and hereby is, DISMISSED AS MOOT.

Defendant City of Lynchburg's Motion to Dismiss shall be, and hereby is, GRANTED. Plaintiffs' claims against the City of Lynchburg shall be, and hereby are, DISMISSED WITHOUT PREJUDICE.

It is so ORDERED.

The Clerk of the Court is hereby directed to send certified copies of this ORDER and accompanying MEMORANDUM OPINION to all Counsel of record.