Eva **DAWSON, as personal representative of the ESTATE OF Joseph DAWSON, and for benefit of his heirs and in their own capacity, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 2:04–1027–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 31, 2004.

James Meritt, Jr., Columbia, S.C., for plaintiff.

John H. Dorego, Charleston, S.C., for defendant.

## ORDER

NORTON, District Judge.

This matter comes before the court on defendant's Motion to Dismiss. Defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Defendant argues that plaintiff's administrative claim was not properly filed with the Department of Veterans Affairs Regional Counsel's office and that, as a result, plaintiff is not the proper party to bring suit against it under the Federal Tort Claims Act.

### I. Background

On April 1, 2004, plaintiff, Eva Dawson ("Ms. Dawson"), filed survival and wrongful death claims against defendant, the United States of America (hereinafter referred to as the "government") under the Federal Tort Claims Act ("FTCA") as the personal representative of her father's Estate. Generally speaking, her complaint alleges that the medical staff of the Ralph Johnson Veterans Hospital in Charleston, South Carolina (the "Veterans Hospital" or "hospital") was negligent in operating on her father, Joseph Dawson, Sr. ("Mr. Dawson, Sr.") against her consent as his legally appointed guardian.

The allegations forming the basis of the complaint are as follows. On December 27, 1998, Mr. Dawson, Sr. was admitted to the Veterans Hospital for pain in his side. Mr. Dawson, Sr. was examined and further tests were recommended by the treating medical staff, but plaintiff, who was acting on behalf of her father as his court-appointed guardian, refused further testing because Mr. Dawson, Sr. had already been scheduled to undergo tests with his family doctor the following week. (Basis for Pl.'s Admin. Claim for Damage, Injury, or Death; Def.'s Ex. 3). Mr. Dawson, Sr.

was then admitted to the Veterans Hospital for observation and re-hydration. (*Id.*). On the following day, December 28, 1998, the Senior Chief Resident called plaintiff at her home and informed her that he wanted to perform "exploratory" surgery for what he believed was a blockage in Mr. Dawson, Sr.'s colon. This individual also informed plaintiff that "she had plenty of time to gather the family together" because the desired surgery was not "urgent." (*Id.*). Later that same day, when plaintiff arrived at the hospital with her brother, Joseph Dawson, Jr. ("Mr. Dawson, Jr."), Dr. John G. Allison told her that he wanted to operate on Mr. Dawson, Sr. because he believed her father had "a problem" with his colon. (*Id.*). Ms. Dawson asked whether there was time for a second opinion and Dr. Allison answered yes. Dr. Allison also asked Mr. Dawson, Sr. whether he wanted the surgery performed, but Ms. Dawson informed the doctor that her father had been declared incompetent and that she was appointed to make his medical decisions as his appointed guardian and conservator. (*Id.*). Ms. Dawson, however, did not have the appropriate paperwork with her verifying her legal status. She told the doctor that she would return home for the paperwork and she left Mr. Dawson, Sr. at the hospital with her brother.

While Ms. Dawson was away from the hospital and Mr. Dawson, Jr. was out of his father's hospital room, Dr. Allison asked Mr. Dawson, Sr. if he wanted the surgery to be performed. The government contends that prior to doing this, Dr. Allison determined to his satisfaction that Mr. Dawson, Sr. was sufficiently competent to consent to the surgery and he additionally consulted with legal counsel for the hospital as well as an anesthesiologist to confirm this fact. Mr. Dawson, Sr. provided his consent and signed a consent form. As a result, when Ms. Dawson returned to the hospital the surgery had already been performed. During surgery, the attending physicians discovered cancer in Mr. Dawson, Sr.'s colon and removed part of his colon and sutured it without an external bag. (*Id.*). Following his surgery, between December 28, 1998 and January 4, 1999, Mr. Dawson, Sr. appeared to be progressing well, but bowel contents later began leaking from his incisions. On January 4, 1999, surgery again was performed because of this leakage and a "Hartman Pouch" was attached. Unfortunately, however, Mr. Dawson, Sr.'s condition continued to deteriorate and he died on January 7, 1999.

According to plaintiff's administrative claim, Mr. Dawson, Sr.'s clinical record states that "[a]fter informed consent was obtained from the patient, he was taken emergently into surgery." (Def.'s Ex. 3). Plaintiff, of course, disputes this fact based upon her allegation that she was Mr. Dawson, Sr.'s legal guardian at the time and that her father was legally incompetent and could not consent to "treatment, much less surgery." (*Id.*). As mentioned, defendant has now moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

## II. Standard of Review

When considering a Rule 12(b)(1) motion to dismiss, a court assumes that all factual allegations in the complaint are true. The court, however, is not is not obligated to assume that a plaintiff's legal conclusions or arguments are also true. To survive a 12(b)(1) motion, the plaintiff bears the burden of proving subject matter jurisdiction, but the court may also consider evidence outside the pleadings to determine whether jurisdiction exists. The moving party should prevail only if the material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a

matter of law. *Falwell v. City of Lynchburg, Va.,* 198 F.Supp.2d 765, 772 (W.D.Va. 2002) (citations and quotations omitted).

## III. Discussion

In moving to dismiss plaintiff's complaint, the government emphasizes that on July 13, 2000, Ms. Dawson was "discharged as the Personal Representative of the Estate of Joseph A. Dawson, Sr. [and, as a result,] the surety on her bond was released and the estate was closed." (Def.'s Mem. in Supp. at 3). Accordingly, the government contends that because there was "no open case and ... no personal representative of [Mr. Dawson, Sr.'s] Estate[,] at the time plaintiff filed both her administrative action on December 14, 2000 and on April 1, 2004, when she filed this FTCA action, subject matter jurisdiction is lacking." (Def.'s Mem. in Supp. at 4–5).

In support of its motion, the government points out that under South Carolina law, "only the personal representative of the decedent's estate can pursue" either a survival or wrongful death claim. *See* S.C.Code Ann. § 15–51–10; § 15–51–90. As such, the government contends that because Ms. Dawson was no longer the personal representative of her father's estate at the time of filing with respect to both her administrative claim and this FTCA action, she is not the proper party to bring suit against it. In making this argument, the government relies upon the decision of *Pringle v. United States,* 419 F.Supp. 289 (D.S.C.1976). *Pringle* is factually similar to this case because there the plaintiff filed survival and wrongful death claims against the federal government prior to being appointed as the personal representative of his deceased son's estate and the government subsequently filed to have the case dismissed for lack of subject matter jurisdiction. In concluding that subject matter jurisdiction was lacking, the district court held that:

> The defendant correctly asserts that the provisions of the Federal Tort Claims Act must be strictly construed since the United States, as sovereign, is immune from suit except in those cases and under those procedures provided by law. The terms of its consent to be sued in any court define the court's jurisdiction to entertain suit. In the present case, John Pringle, Jr., was the duly appointed administrator of the Estate of Ronald J. Pringle, deceased, at the time the suit was brought in this court, but was not so qualified and appointed at the time of the filing of the first two claims [for survival and wrongful death] .... The filing of administrative claims under the Federal Tort Claims Act is covered by 28 C.F.R. 14.3(c) ... which provides: "(c) A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such claims in accordance with applicable state law".... The plaintiff was not the executor or administrator at the time of the administrative claim and applicable state law indicates that an action for wrongful death is a nullity unless brought by the properly appointed personal representative of the estate .... The plaintiff contends that the factual situation in this case requires a liberal reading and application of the law and that the plaintiff has complied with the spirit, if not the letter of the law. Congress, in enacting the Federal tort Claims Act was impinging on the doctrine of sovereign immunity. The conditions put upon the exercise of the privilege created called for literal interpretation of the procedure for filing an administrative claim and the time limitations applicable thereto. The jurisdictional requirements cannot be waived or

changed by estoppel. Unfortunate as it may be, the plaintiff has not complied with the requirements of the law creating the right to sue the United States of America and, therefore, this claim must be and the same is hereby denied.

*Pringle*, 419 F.Supp. at 291–92.

Of course, in light of this holding, the government argues that the same result applies in this instance because under South Carolina law only the personal representative of an estate may bring survival or wrongful death claims. Any other result, the government contends, would offend the stated purpose of § 2675 of the FTCA, which it observes is "to ease court congestion and to avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." (Def.'s Mem. in Supp. at p. 7) (quoting S.Rep. No. 89–1327).

In Response, plaintiff notes that at the time of the *Pringle* decision, a "relation back doctrine" did not exist under the South Carolina Rules of Civil Procedure,[1] yet this is not the case today. As was observed in *Thomas v. Grayson*, 318 S.C. 82, 456 S.E.2d 377, 380 (1995),

> The subsequent adoption of Rules 15(c) and 17(a), SCRP allow for the relation back of an amendment to the complaint to assert the qualification in South Carolina of the ... personal representative in an action which was otherwise untimely. While our older cases answered this question negatively, our present Rules of Civil Procedure 15(c) and 17(a) require that such a pleading now be permitted. The rationale of the older cases was based on the idea that a change in plaintiff's capacity to sue was tantamount to bringing a new cause of action. The rule does not defeat the legitimate use of the statute of limita-

---

1. Indeed, the district court in *Pringle* noted that this was a determinative factor in its decision to dismiss the action for lack of subject matter jurisdiction. Citing to *Glenn v. E.I. DuPont De Nemours & Co.*, 254 S.C. 128, 174 S.E.2d 155 (1970), the court observed that, "there is no 'relation back doctrine' which allows substitution of a properly qualified administratrix in place of the plaintiff after an action has been commenced by one who is not so qualified by the Probate Court." *Pringle*, 419 F.Supp. at 291. This was influential in the outcome of *Pringle* because the statute of limitations for bringing the FTCA claim had already expired by the time the court addressed the matter. Therefore, it was not possible for the plaintiff to withdraw the action and re-file after he had obtained the appropriate guardianship status with the county probate court. Had a "relation back doctrine" existed, the plaintiff could have arguably obtained this status and simply amended his original complaint to indicate that he was the legal guardian of his son's estate without losing the benefit of the timeliness of his original administrative claim.

At least one other court has predicted that had a "relation back doctrine" existed within South Carolina when *Pringle* was decided, the result would have been different. In *Wozniak v. United States*, a district court observed that: "In *Pringle*, the court, acting after the two year period had run, refused to allow the appointment of the plaintiff as administratrix of the decedent's estate to relate back to the plaintiff's administrative claim brought within the two year period because South Carolina law did not recognize the relation back doctrine. Indeed it appears that, had South Carolina law been different, so would the outcome there." 701 F.Supp. 259, 261 (D.Mass. 1988). A description of *Pringle* by the Fourth Circuit hints at the same conclusion. In *Mintz v. United States*, No. 87–3032, 1988 WL 21222, *2 (4th Cir. Mar. 7, 1988), the court observed that, "[i]n *Pringle v. U.S.*, the father of a deceased filed a federal tort claim without first qualifying as personal representative of the decedent's estate. The court, in applying federal law, looked to South Carolina law to determine whether the father had properly qualified as personal representative. Because he had not and therefore had no standing to make a claim, *the claim failed on the running of the limitations period.*" (emphasis added).

tions. It however, prevents the defendant from defeating the plaintiff's claim on a technicality in the pleading. We find that relation back of an amendment to assert the qualification under South Carolina law can be allowed.

Plaintiff therefore contends the fact that she was not legally the personal representative of her father's estate at the time she brought this action is not determinative of this court's subject matter jurisdiction. In so arguing, plaintiff notes that she "has since made a motion to reopen the Estate, and resume her role as Personal Representative to pursue this matter to its conclusion." (Pl.'s Response at 2). As such, presumptively plaintiff will seek to amend her complaint to assert her legal right to bring the FTCA claim on her father's estate's behalf in reliance on the "relation back doctrine" when she is reappointed as the estate's personal representative.

The government counters that *Thomas* is nevertheless inapplicable to Ms. Dawson's situation because Ms. Dawson was not the personal representative of her father's estate when she filed the administrative claim with the Department of Veterans Affairs. On this point, the government protests that,

> Plaintiff distorts the basis for the government's motion in contending that the only problem the government has with the case is that Plaintiff is not now the personal representative of the Estate. However, as the government made clear in its initial memorandum, *the more critical problem* is that Plaintiff was never the legal claimant during the entire administrative claim phase; she had no right to either pursue or compromise an administrative claim as she was not the personal representative of the Estate .... Plaintiff's invocation of *Thomas v. Grayson,* 318 S.C. 82, 456 S.E.2d 377 (1995), does not alter this reasoning.

*Thomas* dealt solely with issues of South Carolina pleading and limitations law ....

(Def.'s Reply at 3) (emphasis added).

■ In assessing the government's position that the relation back doctrine will not save plaintiff from the limitations period because of the alleged technical insufficiency of her administrative claim, it appears that the government has chosen to ignore the majority of circuits which have now held that there is no jurisdictional requirement that an administrative claim be filed by the personal representative of an estate. As was observed in *Knapp v. United States,* 844 F.2d 376 (6th Cir.1988), the requirement of 28 C.F.R. § 14.3(c) is nonjurisdictional in nature and the failure to file a survival or wrongful death claim under the FTCA by the person authorized by state law does not defeat the district court's subject matter jurisdiction. While it does not appear that the Fourth Circuit has specifically addressed this issue, several other circuits have arrived at this conclusion. *See e.g., Zywicki v. United States,* No. CIV.A. 88–1501–T, 1991 WL 128588, *2 (D.Kan. June 20, 1991) (observing that the Third, Fifth, Sixth, Seventh, Ninth, and the District of Columbia circuits have "reasoned that the only jurisdictional requirements of the FTCA administrative process are that the claimant give the agency adequate written notice of the claim and the underlying facts and that the claimant place a value on the claim"). Notably, each of these circuits reached this conclusion *after* this court decided *Pringle. See Zywicki,* 1991 WL 128588 at *2 (listing the relevant circuit court decisions).

■ The court presumes that the government was aware of this prevailing interpretation of 28 C.F.R. § 14.3(c) at the time it filed its Motion to Dismiss, but instead chose to cater its arguments more specifically to 28 U.S.C. § 2675(a), the ju-

**494**

risdictional section of the FTCA. In its supporting argument, the government correctly notes that § 2675(a) is jurisdictional in nature and cannot be waived. However, while section 2675(a) establishes the jurisdictional limitation of the FTCA, federal regulations outline certain criteria for filing claims under the FTCA. The majority view is that an administrative claim conforms to these criteria so long as it provides written notice sufficient to enable the relevant agency to investigate the claim and respond either by settlement or by defense. Furthermore, courts which have addressed the precise factual situation facing the court here have held that these criteria are met notwithstanding the fact that an administrative claimant is not the legal representative of an estate at the time of the initial filing. *See Dykes v. United States*, 794 F.Supp. 334 (D.S.D. 1992); *Zywicki*, 1991 WL 128588. As noted in *Zywicki*, an administrative claim filed in this fashion is presumptively sufficient to put the government on notice unless the government can affirmatively show otherwise. *Zywicki*, 1991 WL 128588 at *3. The government has not made such a showing in this case and, as such, the reasonable conclusion is that "[b]ecause plaintiff's claim satisfied the *minimal* requirements of 28 U.S.C. § 2675(a), jurisdiction is proper over this action." *Id.* (emphasis added).

## IV. Conclusion

For the reasons stated it is therefore **ORDERED** that defendant's Motion to Dismiss be **DENIED.**

**AND IT IS SO ORDERED.**